STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. FRANK M. SWEENEY, DEFENDANT-APPELLANT.

Argued June 4, 1963—Decided July 1, 1963.

*Mr. James V. Segreto* argued the cause for defendant-appellant (*Messrs. Segreto & Segreto,* attorneys; *Mr. James V. Segreto,* of counsel and on the brief).

*Mr. Archibald Kreiger,* Passaic Assistant County Prosecutor, argued the cause for plaintiff-respondent (*Mr. John G. Thevos,* Passaic County Prosecutor, attorney; *Mr. Kreiger,* of counsel).

The opinion of the court was delivered

PER CURIAM. We read the opinion of the Appellate Division, 77 *N. J. Super.* 512 (1962), to hold that a person "oper-

ates"—or for that matter, "drives"—a motor vehicle under the influence of intoxicating liquor, within the meaning of *N. J. S. A.* 39:4–50 and 39:4–50.1, when, in that condition, he enters a stationary vehicle, on a public highway or in a place devoted to public use, turns on the ignition, starts and maintains the motor in operation and remains in the driver's seat behind the steering wheel, with the intent to move the vehicle, and that in this case the trial court could clearly infer such intent from the evidence. We thoroughly agree and therefore affirm the judgment of conviction.

FRANCIS, J. (dissenting). The statute being construed provides that "[a] person who operates a motor vehicle while under the influence of intoxicating liquor * * * shall be subject, for a first offense, to a fine of not less than two hundred nor more than five hundred dollars ($500.00), or imprisonment for a term of not less than thirty days nor more than three months, or both, * * * and shall forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period of two years from the date of his conviction." *N. J. S. A.* 39:4–50.

Prior to defendant's arrest, his car was parked at the curb on Broadway, a main artery in the City of Paterson. There is not the slightest suggestion that the parking position was not normal and in accord with the Motor Vehicle Act as well as pertinent local ordinances. There is no proof in the record as to the length of time it had been parked there, or in fact, that defendant did the parking.

A police officer happened along and observed the defendant sitting in the driver's seat with the motor running. There is no suggestion that the car was in gear. No one said it moved an inch from its parked position. The defendant was intoxicated and the officer ordered him out of the car. On these facts he was charged with operating his car under the influence of intoxicating liquor. The County Court judge expressed the charge in the terms commonly employed, "drunken driving." See *State v. Emery*, 27 *N. J.* 348, 351, 355 (1958);

*Latimer v. Wilson,* 103 *N. J. L.* 159, 163 (*E. & A.* 1926);
*State v. Rodgers,* 91 *N. J. L.* 212, 214–215 (*E. & A.* 1917).

At the trial in the Municipal Court, defendant stipulated
intoxication, and that he turned the ignition key and started
the motor. No further testimony was offered. The court
found defendant guilty of operating his car under the influ-
ence of intoxicating liquor, saying among other things that
"perhaps" Sweeney did not mean to start the motor, but re-
gardless, there would have to be a finding of guilt.

The Appellate Division opinion affirming the conviction
says:

"* * * The turning of the automobile's ignition switch and the
starting of its motor was an operation of the car connected with its
use and presence on the highway. Moreover, such an act justifies
the inference that defendant intended to take the next step in the
operation of the car—to put the vehicle into motion.

* * * * * * * *

We hold that defendant's acts, while intoxicated, in entering the
automobile, turning on the ignition, starting and maintaining the
motor in operation, and remaining in the driver's seat behind the
steering wheel, where he was found by the police, justify his con-
viction as the operator of the automobile. In an intoxicated condi-
tion, he was, for all practical purposes, then in control of a dangerous
instrumentality." *State v. Sweeney,* 77 *N. J. Super.* 512, 521 (*App.
Div.* 1962).

My colleagues agree with that interpretation of the statute. I
cannot do so.

We are dealing here with a *quasi*-criminal legislative enact-
ment which visits serious consequences upon those who trans-
gress it. The fact that all of us are aware of the hazards pre-
sented by drunken automobile drivers on the highways should
not drive us from the normal view that penal statutes call for
strict construction. Conduct should not be declared criminal
unless it is plainly within the terms of the lawmakers' con-
demnation.

In my judgment "operates" in the Motor Vehicle Act con-
text is and was used as synonymous with "drives." The word
connotes and requires movement of the car on the highway

before violation occurs. Under my colleagues' view, if an intoxicated person gets into an automobile, sits in the driver's seat and starts the motor, he is guilty of operating the vehicle while under the influence of intoxicating liquor. The mere act of making the motor run, even though the brake remains on and the gear shift in park position, is sufficient to convict. Thus, a person under the influence, who starts the motor to take advantage of the heater on a cold night, or perhaps to use the radio without running down the battery, while he waits for the appearance of someone else, or perhaps while he waits to recover his sobriety, or for other conceivable reasons, may be found guilty of operating the car. Such suggestions can be made the butt of much caustic or sardonic humor, but just as the public deserves protection against the drunken driver, no individual should be convicted as such a driver or operator unless he fits the description established by the Legislature.

I am convinced the lawmakers and other officially-interested persons regarded "operate" as interchangeable with "drive." There is no reasonable support in the legislative history for the view that an immobile automobile is being driven or operated by a person who seats himself behind the steering wheel and does no more than start the motor.

The first statute on the subject appeared in 1906. It provided that:

"No intoxicated person shall drive a motor vehicle." *L.* 1906, *c.* 113, *p.* 186; *C. S., Motor Vehicles*, § 19, *p.* 3434; repealed *L.* 1921, *c.* 184.

In 1909 the offense was made a crime. *L.* 1909, *c.* 127, *p.* 200 ordained:

"Any person * * * who shall drive a motor vehicle while in an intoxicated condition, * * * shall be guilty of a misdemeanor." *C. S., Motor Vehicles* (Punishments and Penalties), § 36b, *p.* 3442, repealed *L.* 1924, *c.* 184.

In 1913 the Legislature apparently felt the violation should not be treated as a crime but rather as a disorderly persons offense. So, *chapter* 67 of the laws of that year was altered to speak as follows:

"1. Any person or persons who shall *operate* an automobile or motor or any other vehicle *over any public street* or highway while under the influence of intoxicating liquors shall be adjudged to be a disorderly person, * * *." *L*. 1913, *c*. 67, *p*. 103. (Emphasis added)

The need for strengthening and for strict enforcement of this provision was discussed in every annual report of the Commissioner of Motor Vehicles from 1914 through 1925. Attention is drawn to the fact that the terms "drive" and "operate" are used interchangeably. See, *Ninth Annual Report of the Commissioner of Motor Vehicles to the Legislature of the State of New Jersey for the Year* 1914, at *p*. 38; *Tenth Annual Report, etc.,* at *p*. 34; *Eleventh Annual Report, etc.,* at *p*. 19; *Twelfth Annual Report, etc.,* at *pp*. 20–21; *Thirteenth Annual Report, etc.,* at *pp*. 30–31; *Fourteenth Annual Report, etc.,* at *p*. 14; *Fifteenth Annual Report, etc.,* at *p*. 20; *Sixteenth Annual Report, etc.,* at *p*. 19; *Seventeenth Annual Report, etc.,* at *p*. 27; *Eighteenth Annual Report, etc.,* at *p*. 52; *Nineteenth Annual Report, etc.,* at *pp*. 45, 46; *Twentieth Annual Report, etc.,* at *pp*. 52–54.

In 1920 the Legislature, by joint resolution, created a commission to investigate vehicular traffic and to prepare a motor vehicle and traffic act. The commission submitted its recommendations to the Legislature in 1921. Although the 1913 act referred to above (using the word "operate") was in effect, the commission obviously treated "operate" and "drive" as synonymous. Among other things, the report recommended:

"Transferring the prohibition against intoxicated *driving* from the Disorderly Persons Act to the Motor Vehicle Act, and providing for the revocation of the license of anyone convicted of *driving* while under the influence of intoxicating liquor, for a period of one year for the first offense and five years for any subsequent offense;"

*Report of the New Jersey Commission Created, etc. to Prepare a Motor Vehicle and Traffic Act to the Governor of New Jersey and the Legislature of the Session of* 1921 at *p.* 14. (Emphasis added)

There was nothing in that report or in any one of the Motor Vehicle Commissioner's reports, referred to above, which suggested a change in the idea that driving and operating meant the same thing in the existing statute. In adopting the commission's recommendation, the Legislature in 1921 put the ban on intoxicated driving substantially in its present form, *i. e.,*

"No person shall operate a motor vehicle while under the influence of intoxicating liquor \* \* \*." *L.* 1921, *c.* 208, *p.* 665.

The statement attached to the bill reveals that there was no intention to depart from the long-standing common connotation of drive and operate. The statement attached to the bill said:

"This bill embodies the recommendations of the Motor Traffic Commission created by the Joint Resolution No. 2 of the 1920 Legislature. *The changes sought to be effected will be found in the Commission's report.* All inconsistent legislation is to be repealed by another bill." (Emphasis added)

Added indication of absence of legislative intention to differentiate in this context between "drive" and "operate" appears nine lines farther down in the 1921 act, where the penalty is prescribed. It says:

"\* \* \* Any person who shall violate this provision shall, upon conviction thereof, be punished by an imprisonment of not less than thirty days and not more than six months; and shall forthwith forfeit his right to *operate a motor vehicle over the highways of this State;* and no new license shall be issued by the Commissioner of Motor Vehicles to any person convicted of *operating* a motor vehicle while under the influence of intoxicating liquor \* \* \* until one year after the date of his or her conviction, if for a first offense, or five years after any subsequent conviction." *L.* 1921, *c.* 208, *p.* 665. (Emphasis added)

Except for change in the extent of penalty, the present statute is in substantially the same form.

Provisions for penalty in the act were revised again by *L. 1923, c. 136* and *L. 1924, c. 160*. The statement on the 1923 act refers to the "necessity of curbing intoxicated driving"; that on the 1924 act speaks of the "commitment of intoxicated drivers to the county jail or workhouse," and of the "great seriousness of operating a motor vehicle while under the influence of intoxicating liquor."

Finally, it should be noted that in 1951 the Legislature gave further specific indication that "operate" meant "drive," and that an automobile was not being operated within the contemplation of the section of the Motor Vehicle Act being construed unless it was in motion on a roadway. In that year *Chapter 23, Laws of 1951* was adopted relating to the use of blood tests to determine intoxication. The significant language is:

"In any prosecution for a violation of section 39:4–50 of Title 39 of the Revised Statutes *relating to driving a vehicle while under the influence of intoxicating liquor,* the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance shall give rise to the following presumptions: * * *" *N. J. S. A.* 39:4–50.1. (Emphasis added)

In the face of this history, it is not reasonable to conclude that "operate" means something more than "drive." Certainly, in a penal statute where there is at least grave doubt that the Legislature intended to depart from historical significance and usage in the pertinent statutes, and to enlarge the scope of "operate" to include sitting at the driver's wheel of a stationary and properly parked automobile, and starting the motor, the doubt ought to be resolved in favor of a defendant. Such enlargement, carrying as it does serious consequences to a motor vehicle driver, should not be assumed in the absence of clear and definitive statement in the statute. If the Legislature wished to create an offense of such broad

boundaries, I am sure it was, and is now, competent to say so in unmistakable language.

In short, it seems to me, on the whole record of the statute under consideration, that the legislative intent was to ban driving on the roadways of the State while under the influence of intoxicating liquor. A stationary vehicle is not being operated in the sense required for conviction; nor was the purpose of the act to make proof of an unexecuted intent to drive (operate) sufficient to convict of the offense specified therein.

Accordingly, I vote to reverse.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—Justice FRANCIS—1.