126 N.J. Super. 313 (1973)
314 A.2d 371
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN A. DALY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 30, 1973.
Decided April 10, 1973.
*314 Before Judges KOLOVSKY, MATTHEWS and ARD.
Mr. Edward L. Keefe, attorney for appellant.
Mr. George F. Kugler, Jr., Attorney General, attorney for respondent (Mr. John De Cicco, Deputy Attorney General, of counsel).
PER CURIAM.
Defendant was charged with operating a motor vehicle while under the influence of alcohol, contrary to the provisions of N.J.S.A. 39:4-50(a). He was tried in the Municipal Court and found guilty. An appeal was taken to the Monmouth County Court and after trial de novo defendant was again found guilty. He was fined $200 and his driving privileges were suspended for two years.
Defendant was arrested at 3:20 A.M. while in his car which was parked in the parking lot of an Englishtown tavern. Defendant admitted at the time of arrest that he was under the influence of alcohol and so stipulated at both trials below. Defendant further admitted that the key was in the ignition and the motor running at the time of arrest.
The arresting officer testified that at about 3:20 A.M. he and his partner observed a vehicle in the parking lot of the Brookside Tavern in Englishtown. The motor was running and it appeared that someone was in the vehicle. The headlights of the vehicle were off. The police car headlights were directed onto the parked car and the officer approached the vehicle and rapped on the window of the driver's side. The defendant "looked up" at the officer as he shined a light into the car. The driver's seat was slightly reclined although in the officer's opinion the car could be driven with the seat in that position. Defendant said he was keeping warm and was going to drive home in a little while. The officer observed *315 defendant's intoxicated condition and told him he would "have to stay here; you can't drive your vehicle." The officer stated that defendant then said, "you're full of shit. I will drive my car when I feel like it." Defendant was arrested and refused to take a breath test explaining that he knew he was drunk and did not need a test to tell him so.
At the time of arrest the officer did not notice if the car was in gear, if the hand brake was on or if defendant had his feet on the pedals. He stated that the temperature was near freezing and defendant was wearing an army field jacket. The bars in Englishtown close at 2 A.M.
Defendant testified that he had driven from upstate New York to visit his sister in Englishtown. Upon arrival in Englishtown around 7:30 or 8 P.M., he stopped at the tavern. He attempted to call his sister a couple of times but got no answer. A movie on television got his attention and he remained in the tavern drinking and watching television until sometime between 12:00 and 12:30 A.M. Upon leaving the tavern he stated he realized he had "a bit too much to drive," and he made up his mind to sleep it off in his car. Upon entering the car he turned on the motor to run the heater for warmth and "dropped the seat back a bit to sleep." (The car was a foreign built sports model.) The seat was reclined to about 120 degrees. He slept on and off until awakened by the trooper, waking occasionally to run the motor for warmth.
He said he was awakened by a light laid against the window of the car on the driver's side and somebody rapping on the glass. He opened the window, saw a police officer, and was asked for his license and registration. He claims the officer said to his partner "this man is driving under the influence" to which he says he responded, "No, I'm not driving." He was then asked why the motor was running and said to "keep myself warm." The officer said that showed intent to drive and defendant responded "* * * that's a lot of bullshit. I have no intention of driving this car." He was then arrested.
*316 Defendant also testified that he had not left the car in the lot because he had valuable belongings in the trunk of his car and that the lock on the trunk was broken. He also said that he had not remained in the tavern because he had not intended to buy any more drinks.
The County Court Judge found defendant guilty as charged; his conclusions, in their entirety, were:
There is no doubt in my mind, [the] most reasonable inference [to be drawn], especially because of the [interest of the] defendant in the outcome of this litigation, that he was behind the wheel and he intended to drive. He was not going to leave that car there all night with all the thousand dollars worth of valuable goods in it. That's the reason he didn't call a taxicab, [he was] just going to see if he felt well enough to pull out of there when he could and he certainly would not sleep there all night long, I'm quite sure.
If you have had any experience in drinking intoxicating beverages you also find that the calls of nature come on rather suddenly. He wasn't going to go out there and defecate out in the public place, I'm quite sure.
Mr. Keefe, I have concluded Mr. Daly is guilty as charged, that he was violative of the Motor Vehicle Act, more particularly 39:4-50(a), whatever it is.
We find that these observations do not support the conclusion of guilt and reverse.
While we agree with our dissenting brother that this court "should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the `feel' of the case, which a reviewing court cannot enjoy," State v. Johnson, 42 N.J. 146, 161 (1964), we do not understand Johnson as dictating an abolition of the process of record review by this court  especially when the trial judge himself gives no indication on the record as to his "feel" of the cause or his assay of the demeanor of any witness. The result we reach springs from the sense of "wrongness" which comes in our minds as we review the record which in turn arises from our conviction that the trial judge erroneously evaluated the proofs as a whole. Johnson, above, 42 N.J., at 162.
*317 The sole issue on this appeal is whether the record supports the conclusion that the defendant who was concededly intoxicated intended to operate his motor vehicle on the date in question contrary to the provisions of N.J.S.A. 39:4-50(a). See State v. Sweeney, 77 N.J. Super. 512 (App. Div. 1962), aff'd 40 N.J. 359 (1963).
In Sweeney, defendant was convicted of violating the statute under circumstances somewhat similar to those presented here. Sweeney was found by the Paterson police at 1 A.M. sitting in his car, which was parked at the curb on a city street, behind the wheel with the motor running. He was extremely intoxicated. At the trial his counsel stipulated that he had entered his car and started the motor. Sweeney did not testify at any time. In upholding the conviction which had been affirmed by this court, the Supreme Court stated:
We read the opinion of the Appellate Division, * * * to hold that a person "operates"  or for that matter, "drives"  a motor vehicle under the influence of intoxicating liquor, within the meaning of N.J.S.A. 39:4-50 and 39:4-50.1, when, in that condition, he enters a stationary vehicle, on a public highway or in a place devoted to public use, turns on the ignition, starts and maintains the motor in operation and remains in the driver's seat behind the steering wheel, with the intent to move the vehicle, and that in this case the trial court could clearly infer such intent from the evidence. We thoroughly agree and therefore affirm the judgment of conviction. (Emphasis added) [40 N.J., at 360, 361].
We do not read Sweeney as precluding the rebuttal of the inference mentioned by facts which indicate a contrary intent. As noted, no evidence was adduced on behalf of Sweeney, and the only logical inference to be drawn from the facts adduced was that Sweeney intended to operate his motor vehicle at the time he was apprehended.
In prosecutions for violation of N.J.S.A. 39:4-50, the State has the burden of proving the offense beyond a reasonable doubt. State v. Johnson, 42 N.J. 146, 156 (1964); State v. Emery, 27 N.J. 348, 353 (1958).
*318 As we have indicated, the arresting officer admitted that at the time of arrest the headlights of defendant's vehicle were off, the driver's seat was, at least to some extent, reclined, and that defendant had stated to him that the engine was running so that he could keep warm. It is also undisputed that the temperature at the time was near freezing.
The officer quoted defendant as saying at one point that he was going to drive home "in a little while" and that he later said, "I will drive my car when I feel like it." Interestingly, the officer added to this last quoted answer his volunteered observation, "this was showing the intent at that time he was going to drive his vehicle."
Defendant's presence in and stated time of departure from the tavern to his car were unrefuted and, indeed, unchallenged. Even if we assume he did not leave until the 2 A.M. closing time, he would still have been in the car for one hour and twenty minutes before the police arrived. Defendant in his testimony denied that he stated to the officer that he intended to drive his vehicle in a little while, and that he actually said, "I have no intention of driving this car."
The only area for dispute between the facts adduced by the State and those adduced by defendant was the content of the conversation had between the arresting officer and defendant at the scene. Accepting the police version of the disputed testimony as correct, (We note no real problem of credibility, and indeed the trial judge made no determination as to credibility except for a laconic reference to interest in the outcome of the litigation.) we regard defendant's statements as related by the trooper to have been equivocal and insufficient for the trier of the fact to conclude that defendant intended to move his car prior to regaining sobriety. Even the arresting officer conceded that it was his opinion that the defendant had no present intention to operate the vehicle at the time he was apprehended.
We find the record devoid of sufficient credible evidence to sustain the conviction beyond a reasonable doubt. State v. *319 Johnson, above; compare State v. Fearon, 110 N.J. Super. 131 (App. Div. 1969), reversed on dissenting opinion, 56 N.J. 61 (1970).
The judgment of conviction is reversed.
KOLOVSKY, P.J.A.D. (dissenting).
I am satisfied from my study of the record that the findings made in the County Court by Judge Conklin "could reasonably have been reached on sufficient credible evidence present in the record * * * [considering] the proofs as a whole * * * [so that we] should not disturb the result, even * * * [if we had] the feeling [that we] might have reached a different conclusion were [we] the trial tribunal." State v. Johnson, 42 N.J. 146, 162 (1964).
Moreover, I do not have "the feeling [that I] might have reached a different conclusion were [I] the trial tribunal"; rather, I would have reached the same conclusion.
The situation here presented is that dealt with in State v. Sweeney, 40 N.J. 359, at 360-361 (1963) in which the court ruled at:
a person "operates"  or for that matter, "drives" a motor vehicle under the influence of intoxicating liquor, within the meaning of N.J.S.A. 39:4-50 and 39:4-50.1, when, in that condition, he enters a stationary vehicle, on a public highway or in a place devoted to public use, turns on the ignition, starts and maintains the motor in operation and remains in the driver's seat behind the steering wheel, with the intent to move the vehicle * * *.
Here defendant was found at 3:20 A.M. sitting behind the steering wheel of his Peugot automobile, with its motor running, in the parking lot of a tavern. That defendant was intoxicated is conceded. That concession precluded the development at the trial of the full extent of defendant's inebriation. However, that he was indeed very drunk is clear from the State trooper's testimony that it "took [defendant] three minutes to get his license out of a zippered pocket in his coat," that when defendant got out of the automobile he *320 "was leaning against his vehicle for balance," and that there was a strong odor of alcohol on defendant's breath.
The only controverted issue at the trial on defendant's appeal from his municipal court conviction for drunken driving  a plenary trial before Judge Conklin rather than a trial on the record made in the municipal court, cf. R. 3:23-8  was whether defendant had the "intent to move the vehicle."
Judge Conklin found that defendant had such intent, "that he intended to drive." That finding is fully supported by the record unless, indeed, full credence is given to defendant's testimony that he had no such intent, that he left the tavern at 12 or 12:30 P.M. and had sat and slept in the car since then, turning on the motor from time to time only to keep warm.
Resolution of the issue of credibility as between defendant and the State troopers was however for Judge Conklin as the trier of the facts. There is no justification, on the record here, for an appellate court to overrule his determination with respect to the credibility of the witnesses. An appellate court "should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the `feel' of the case, which a reviewing court cannot enjoy." State v. Johnson, supra, 42 N.J. at 161.
The trial court chose, as it had the right to do, to credit the testimony of the trooper who arrested defendant. Once it did so, the inference that defendant intended to move the automobile was at least permissible, if not mandated, by the circumstances of the case and defendant's conduct, including his statements to the trooper embodied in the following quotation from the trooper's testimony:
[Defendant] told me that he was sitting in this car, keeping warm and he was going to drive home in a little while. I had him step out of the vehicle at this point * * *.
*321 I said to him, sir, due to your sobriety condition you will have to stay here; you can't drive your vehicle.
Q. All right. What did the defendant say?
A. His exact words are, "You're full of shit. I will drive my car when I feel like it."
I would affirm the judgment of conviction.