145 N.J. Super. 570 (1976)
368 A.2d 436
STATE OF NEW JERSEY, PLAINTIFF,
v.
PETER B. PROCIUK, DEFENDANT.
Superior Court of New Jersey, Mercer County Court, Law Division (Criminal).
December 15, 1976.
*571 Ms. Anne Thompson, Mercer County Prosecutor, for the State of New Jersey (Mr. Lee H. Engelman, Assistant Prosecutor appearing).
*572 Messrs. Olesnyckyj & Reimer for defendant (Mr. Nestor L. Olesnyckyj, appearing).
IMBRIANI, J.C.C.
This is an appeal from a conviction of operating a motor vehicle while impaired, in violation of N.J.S.A. 39:4-50(b). A stenographic record having been made in the municipal court, the matter was heard de novo on the record. R. 3:23-8(a).
At 11:26 P.M. on March 23, 1976 Trooper Rich of the New Jersey State Police was called to Exit 7A of the New Jersey Turnpike by other police officers. He saw defendant near the toll booth, his van parked on the other side of the toll booth, 150 yards down the ramp. Defendant told him that he had run out of gas, was alone, had been drinking, and wanted the trooper to get some gas for him. Defendant had "an odor of alcoholic beverage on his breath." The vehicle was searched and revealed one empty beer bottle which was still "wet" on the bottom. Defendant was given a breathalyzer test at 12:12 A.M. which showed a reading of 0.13%, and again at 12:22 A.M. when a reading of 0.14% was obtained.
Defendant made a motion at the end of the State's case to dismiss for failure to prove a prima facie case of "operation" while impaired. Upon denial of this motion, defendant rested without presenting any evidence.
Defendant urges two grounds for acquittal. First, that the State failed to prove beyond a reasonable doubt that he was "operating" a motor vehicle while impaired, and second, that it is improper to infer the prior existence of impairment from subsequent impairment due to the facts and circumstances, especially an alleged intervening cause, surrounding the instant case.
The court will consider each ground separately.
The initial decision which must be made is whether the defendant was in fact "operating" his vehicle, in violation of N.J.S.A. 39:4-50(b) which provides in relevant part:
*573 A person who operates a motor vehicle while his ability to operate such motor vehicle is impaired.
There are three basic ways to prove "operation": observation by the arresting officer, evidence of an intent to drive after the moment of arrest, or a confession by defendant that he was driving.
In the majority of cases the arresting officer observes defendant driving the vehicle. But that is not the case here.
In the second type of cases, there are circumstances which justify the presumption of an intent to operate a motor vehicle. See State v. Sweeney, 40 N.J. 359 (1963). When apprehended by the police defendant was seated behind the steering wheel of his automobile and parked by the curb on a public street with the motor running. The court stated:
Defendant "operated" or "drove" a motor vehicle under the influence of intoxicating liquor, within statutes proscribing such conduct when, in that condition he entered a stationary vehicle, on a public highway, turned on the ignition, started and maintained the motor in operation and remained in the driver's seat behind the steering wheel, with intent to move the vehicle." id. [at 360; emphasis supplied]
The issue of intent was discussed again in State v. Daly, 64 N.J. 122 (1973). Defendant was arrested at 3:20 A.M. while sitting in his parked car in the parking lot of a tavern. The lights were off but the motor was running, and defendant told the officer that he was unable to drive home and was sitting in the car to keep warm. The court found this insufficient evidence of intent to operate and reiterated the necessity thereof:
* * * the statutory sanction is against "operating" a motor vehicle while intoxicated. We conclude, as we did in Sweeney, that in addition to starting the engine, evidence of intent to drive or move the vehicle at the time must appear. [at 125]
In Daly the court was satisfied that defendant had the motor running to keep warm, and not with the intent to move the vehicle.
*574 In virtually all of the cases dealing with this issue the court was able to find an intent to drive, viz: State v. Dickens, 130 N.J. Super 73 (App. Div. 1974), the engine was running and the headlights were on; State v. Guerrido, 60 N.J. Super. 505 (App. Div. 1960), defendant had driven off the driveway, knocked down a fence and tree, and came to rest deep in a thicket of bushes; State v. Damoorgian, 53 N.J. Super. 108 (Cty. Ct. 1958), car was parked on the shoulder of the Turnpike with the parking lights on and defendant asleep behind the wheel; State v. Witter, 33 N.J. Super. 1 (App. Div. 1954), defendant was behind the steering wheel with the motor running, the lights on and he was attempting to dislodge his car from a log.
The facts before the court fail to disclose any intent to drive or even an opportunity to drive. The arresting officer never saw defendant within 150 yards of the vehicle and the vehicle itself, due to a lack of gas, was inoperable. While the statute does not require much to constitute "operation", the vehicle must at least be operable. See People v. Hoffman, 53 Misc.2d 1010, 280 N.Y.S.2d 169, 170 (Cty. D. Ct. 1967). For these reasons we cannot infer that defendant had an intent to drive.
The third and final basis for a finding of "operation" is by a confession.
In State v. Guerrido, 60 N.J. Super. 505 (App. Div. 1960), defendant was found sitting in his car off the road in a group of bushes in front of a house where his wife was working. "He admitted he had driven * * * for the purpose of picking up his wife to take her home." In view of defendant's posture and his admission, the court had no difficulty in concluding that the defendant had driven while intoxicated.
In State v. Sweeney, 77 N.J. Super. 512 (App. Div. 1962), aff'd p.c., 40 N.J. 359, (1963), defendant was found sitting behind the wheel of a car properly parked at the curb of a public street. He admitted that "while intoxicated he had entered the automobile, had turned on the ignition and started *575 the motor." The combination of conduct and confession resulted in conviction.
In State v. Dickens, 130 N.J. Super. 73 (App. Div. 1974), defendant was found asleep in his automobile on Interstate Highway 287 the car engine was running. Defendant admitted drinking at a bar in Rahway and then driving someone home to Piscataway, the township within which he was arrested. The court convicted on the basis of his conduct and admission.
The record in the present case discloses that defendant advised the arresting officer that "he had just run out of gas on the ramp, the ramp coming to 7A, that he needed gas that he wanted me [sic] to get gas for him." (Emphasis supplied). He further indicated that he was alone and had been drinking. An odor of alcoholic beverage was detected on his breath.
While defendant was not in the car and never specifically admitted to being the driver of the vehicle, the clear inference from the use of the word "just" in his statement that he "just ran out of gas," is that defendant, who was alone, had been driving shortly prior to his arrest. The precise time is not significant in this case, but is that time which a person would take to walk 150 yards, a period of minutes. This court finds as a fact and is satisfied beyond a reasonable doubt that defendant was driving his motor vehicle shortly prior, and within minutes, of the time of his arrest.
The applicable statute dealing with presumptions of being impaired due to the amount of alcohol in the defendant's blood is N.J.S.A. 39:4-50.6, which provides in part that
(a)(2) If there was at that time the existence of 0.05% but less than 0.10% by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant's ability to operate a motor vehicle was or was not impaired by the consumption of alcohol, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant;

*576 (3) If there was at that time 0.10% or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant's ability to operate a motor vehicle was impaired by the consumption of alcohol.
Erwin, Defense of Drunk Driving Cases, § 15.02, states that the consensus of expert opinion is that blood alcohol content will reach its peak value somewhere between 45 and 75 minutes after consumption, with an average time of one hour.
Obviously, in almost every case involving a breathalyzer the tests are given at least 30 minutes after the arrest. The trial court then infers what the reading was at the time defendant operated his motor vehicle. Since breathalyzers are not kept in police vehicles, there is no other practical way to use a breathalyzer.
Inferences are by no means unique. The nature of a legal inference was set out in Orcutt v. Hoyt, 6 N.J. 46 (1950):
* * * the existence of a fact at one time will sustain an inference that the existence continued to a later time, and that, within narrower limitation, the inference may be carried back to an earlier time; depending upon various incidents one of which is the tendency of the fact toward change, and another is the discretion of the trier of facts.

* * * * * * * *
* * * the prior * * * time must be so near that nothing may be supposed to have occurred to cause a change; and the distance of time will depend entirely on the thing whose existence is in question [at 65]
From a purely speculative viewpoint there are a number of possibilities which could explain defendant's state of impairment without violating N.J.S.A. 39:4-50(b). Defendant could have been drinking while operating, but since his alcohol level was rising (0.13% at 12:12 A.M. and 0.14% at 12:22 A.M.), it may not have been sufficiently high, while driving, to exceed the 0.10% statutory presumption, or even the evidentiary level of 0.05%. Or defendant may have had several beers earlier in the evening, ran out of gas, then had one or two more beers while waiting and it was this which *577 put him over the threshold level. Or he may not have been drinking at all until after the breakdown and then drank sufficient quantities of alcohol to produce 0.13% and 0.14% readings. See State v. Kaloustian, 212 N.W.2d 843 (N.D. Sup. Ct. 1973).
However, since the court has found as a fact that defendant was driving just before his arrest, the latter two possibilities are rejected. The suggestion that defendant's blood alcohol content was rising and may not have reached 0.10% at the time he was "driving", is more troublesome. Defendant did not consume any alcohol during the 46 minutes prior to taking the first test (he was under arrest during that period of time). We do not know the precise reason for the difference in the test results. While it might have been due to rising blood alcohol content, it could well have been due to normal margin of error in test results.
A person does not become intoxicated immediately upon drinking; but the rate of alcohol increase in the blood during absorption is relatively rapid. Erwin, Defense of Drunk Driving, § 15.02.
As noted above, the average time to reach peak value is one hour. Since the test at 12:22 A.M. was 0.14% and the arrest was at 11:26 P.M., or about one hour earlier, defendant must have been at or near his peak value at 12:22 A.M. But this does not mean he started at zero one hour earlier. He undoubtedly had a significant blood alcohol level at the time of arrest, which may have increased thereafter due to injection of alcohol (perhaps only one bottle of beer) within a reasonable period prior to 11:26 P.M.
In a case of this nature, which is based upon circumstantial evidence, it is the duty of this court to make fair and legitimate inferences from the known facts. While at one time it was the law of this State that to sustain a conviction based upon circumstantial evidence "All of the circumstances not only must concur to indicate a defendant's guilt but they must also be inconsistent with any other rational conclusion", State v. Donohue, 2 N.J. 381, 390 *578 (1949), the law today is that it is sufficient if, viewing the evidence in its entirety and "giving the State the benefit of all legitimate inferences therefrom * * * the jury could properly find, beyond a reasonable doubt" that defendant was guilty. State v. Fiorello, 36 N.J. 80, 90 (1961), cert. den. 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962).
I find that defendant's blood alcohol level at the time he was operating his van was at least 0.10%. Pursuant to N.J.S.A. 39:4-50.6 (a)(3) this raised the presumption that his ability to drive was impaired. There was no evidence to rebut this presumption. I am satisfied beyond a reasonable doubt that defendant was impaired at the time he was operating his van.
One other point. There is evidence of an alleged "intervening circumstance," viz., the "wet" bottle. Professor Wigmore in 2 Wigmore Evidence (3 ed. 1940), § 437 at 412 discusses this concept:
* * * the disturbing contingency is that some circumstances operating in the interval may have been the source of the subsequent existence and the propriety of the inferences, will depend upon the likelihood of such intervening circumstances having occurred and [having] been the true origin.
Defendant argues that the wet bottle found in the van comes within this theory of an intervening circumstance. The arresting trooper testified that his search of the van revealed one empty beer bottle and that "[i]t was wet, it was just drunk, it appeared to me as it was just drunk." The conclusion of the trooper that "it was just drunk" is not supported by anything in the record. This is an inference he made. Nevertheless, one could logically infer that defendant drank all or a portion of the beer in the bottle not very long prior to his arrest. If so, the effect of one bottle of beer cannot be deemed to have substantially affected the test results and may well account for readings of 0.03% and 0.04% above the statutory presumption. But it is not a sufficient quantity which would create an inference *579 that his blood alcohol level was below 0.10% at the time he was driving. Accordingly, I do not find the existence of an intervening cause which could upset my above findings of fact.
There are no cases in New Jersey which are directly on point, but there are two cases from without the State, which the court considered.
In State v. Creighton, 201 N.W.2d 471 (Iowa Sup. Ct. 1972), the arresting officer came upon an injured person wandering near a car stuck in a ditch. The court held that it was a question of fact whether the defendant was under the influence, and whether the operation and intoxication occurred simultaneously at a prior time. Unlike the case here, the court found the record "completely silent" on the latter point, so it directed a judgment of acquittal.
In State v. Clark, 130 Vt. 500, 296 A.2d 475 (1972) two officers found an overturned pick-up truck. The driver of the truck admitted driving and said he fell asleep. There was uncontested evidence by the state at trial that defendant was under the influence of intoxicating liquor at the time the officers found him. However, the State offered no direct evidence that defendant was under the influence at the time of the accident, which time was unknown. The court said [at 477] that to apply such an inference retroactively, the burden was upon the State "of showing by evidence that the accident caused by the defendant occurred within a time that the ... condition in which he was found at the scene had been continuous."
The State failed to meet its burden of proof in Clark where unlike this case, there was no evidence that defendant had "just run out of gas".
This court is satisfied beyond a reasonable doubt that defendant was driving a motor vehicle while impaired in violation of N.J.S.A. 39:4-50(b), and enters a verdict of guilty. Defendant shall forfeit his driving license for a period of six months and is fined the sum of $50.