172 N.J. Super. 587 (1980)
412 A.2d 1339
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH D. JEANNETTE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Law Division  Union County.
Decided January 22, 1980.
*588 John G. Butler for defendant-appellant.
John D. Clarke, Assistant Prosecutor, for the State (John H. Stamler Union County Prosecutor, attorney).
DREIER, J.S.C.
Defendant was convicted in the municipal court of operating a motorcycle under the influence of alcohol, thus requiring a suspension of his driver's license for a period of one year and a fine of $500 plus costs. N.J.S.A. 39:4 50. The issue in the case, one of first impression in New Jersey, is whether defendant's conduct may constitute "operation", of the motor vehicle within the meaning of N.J.S.A. 39:4 50.
From the municipal court record this court finds that on August 17, 1979 defendant was under the influence of alcohol but desired nevertheless to ride his motorcycle from his girlfriend's home to his own. However, this girlfriend refused to give defendant the key to the motorcycle's ignition because of his condition. A police car had responded to the area as a result of an earlier altercation involving the couple, and the police had *589 defendant under nearly continuous observation as he left the girlfriend's house. When he left defendant walked his motorcycle along the side of the street until he turned the corner. The officers followed defendant around the corner and observed the defendant sitting on the seat and riding the motorcycle down a "very slight incline" for a short distance. It was this latter "operation" that formed the basis of the drunk driving. Since the motor would not operate without a key, the court finds that there is insufficient evidence to establish that the motorcycle engine was ever actually engaged, although an officer testified that he heard the motorcycle start.
This court is thus faced with two issues. First, whether coasting on a motorcycle with its engine off may be considered operation thereof within the meaning of the statute, and second, if so, whether under the facts of this case defendant's action as observed by the officers is of sufficient magnitude to justify a conviction.
There is no reported New Jersey authority concerning the coasting of a motor vehicle not under power as included or excluded in the definition of operation within N.J.S.A. 39:4 50. Out-of-state authority provide some cases on point involving automobiles, most holding that intentional movement of a motor vehicle without engine power is sufficient operation to fall within the statute. People v. Jordan, 75 Cal. App.3d Supp. 1, 142 Cal. Rptr. 401 (D.Ct.App. 1977), is particularly relevant:
Respondent next contends that she was not subject to prosecution because she was simply pedaling the moped and there was no evidence that the engine was running prior to the accident. However, it has been consistently held that a person steering or controlling a vehicle may be prosecuted for drunk driving when the vehicle is in motion but the engine is off. [142 Cal. Rptr. at 406]
See, also, Harris v. State, 97 Ga. App. 495, 103 S.E.2d 443 (App.Ct. 1958), and Commonwealth v. Hogue, 1 Pa. D. & C.2d 617 (Cty.Ct. 1954). Cf. Commonwealth v. Clarke, 254 Mass. 566, 150 N.E. 829 (Sup.Jud.Ct. 1926). Analogous cases have also been *590 found involving unpowered cars "driven" by an inebriated driver and being pushed or towed by other vehicles. See, e.g., Rogers v. State, 147 Tex.Cr. 602, 183 S.W.2d 572 (Cr.App.Ct. 1944), and State v. Tacey, 102 Vt. 439, 150 A. 68 (Sup.Ct. 1930). Various cases dealing with the definition of driving or operation in drunk driving statutes are collected at Annotation, "What constitutes driving, being in control of, or operating a motor vehicle within statute making such act while intoxicated an offense," 47 A.L.R.2d 570 (1956), and 61A C.J.S. Motor Vehicles § 628.
This court is of the opinion that the public is to be protected from the operation by an intoxicated driver of a motor vehicle, whether it is powered by its engine or gravity. It is the driver's judgment and dexterity that are impaired, and this impairment is present irrespective of the source of the vehicle's power.
The fact that most of the cited cases involved automobiles is also of little moment. Motorcycles are motor vehicles within the definition of N.J.S.A. 39:1 1 as incorporated in N.J.S.A. 39:4 50. The public, as well as the drivers themselves, are to be protected against the effects of inebriation, without regard to the class of motor vehicle involved. See People v. Jordan, supra.
The more difficult question here is the application of the above principles to the facts of this case. The "operation" by defendant was described in the following questioning of the arresting officer:
Q. All right. Well, the next time you saw him, he was sitting on the bike?
A. He was on the bike, both feet off the ground in operation.
Q. Was there a slight downgrade where he was maneuvering or going along with the bike?
A. Very slight.
Q. And, the motorcycle was moving at a very slow rate of speed, was it not?
A. It was not at a high rate of speed. I don't know how slow he was going, just slow.
*591 The statute does not differentiate between substantial and insignificant violations of its provisions, nor have the courts. An inebriated driver sitting at the side of the road with the motor on and with the intention of moving the vehicle violates the statute. State v. Sweeney, 40 N.J. 359 (1963). It is irrelevant that he may have the intention of moving only a few feet or of proceeding at an extremely slow rate. The Legislature has determined that the operation of certain types of vehicles by an intoxicated driver provides a sufficient risk to the public so as to justify a mandatory penalty for all violations of the statute, however slight. Defendant's argument that there was such little motion while he was astride the motorcycle that the danger to the public was minimal is rebutted by his actions and stated intention, as testified to by defendant himself:
Q. Did there come a time when you straddled the seat?
A. Yes, I did.
Q. Why did you do that?
A. Well, I had to push my motorcycle and other circumstances the battery was low and so forth, and the thing gets heavy to push, so whenever there is a slight hill or anything I just run with it and jump on it.
Q. All right. Was the motor running at the time?
A. No, it wasn't. It needed the key to start it.
Q. How far did you go in a sitting position when the police officers came to stop you?
A. Not even a block. It must have been two or three houses.
........
Q. How fast was the motorcycle going, not when you were walking it but when you jumped on it?
A. It could not have been more than 10, 15 miles an hour. Probably around 10. I'm not really sure how fast that is, you know.
Q. How much of a grade were you rolling on? Was it a steep down grade or a gradual down grade?
A. It's just a slight down grade. It wasn't real steep, but like when I ran a few steps with it and jumped on it, it was enough to keep me going out to Morris Avenue.
Q. Were your feet on the pedals at any time on the street?
A. No, they were on the pedals when I was sitting on it.
In enforcing this statute the police should not be put to balancing various factors such as the speed of the vehicle, angle of *592 grade or danger to public. They should not have to wait until a potential danger is a real one, when they see actions such as these occur. The intentional motion of the motorcycle initiated by defendant and the degree of control exercised by him constitute sufficient operation under N.J.S.A. 39:4 50.
Defendant stands convicted on this trial de novo with the penalties and costs imposed below reimposed in this court.