262 N.J. Super. 413 (1993)
621 A.2d 74
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CARTER B. MORRIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1993.
Decided March 5, 1993.
*414 Before Judges MICHELS and BAIME.
*415 David C. Dixon argued the cause for appellant (Scangarella & Feeney, attorneys; Mr. Dixon, of counsel and on the brief).
Gary A. Thomas, Assistant Essex County Prosecutor, argued the cause for respondent (Clifford J. Minor, Essex County Prosecutor, attorney; Mr. Thomas, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Carter B. Morris was found guilty in the Law Division of (1) operating a motor vehicle while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50(a); (2) resisting arrest in violation of N.J.S.A. 2C:29-2 and (3) simple assault in violation of N.J.S.A. 2C:12-1a. These findings were made following a trial de novo on the record of the proceedings which had previously taken place in the Municipal Court of the City of Newark. Based on these findings, the Law Division judge fined defendant $250, imposed a $100 insurance surcharge under N.J.S.A. 39:4-50.8, assessed a $30 Violent Crimes Compensation Board penalty, directed defendant to attend twelve hours at an Intoxicated Driver Resource Center and suspended defendant's driver's license for six months as a result of his conviction for operating a motor vehicle while under the influence of intoxicating liquor. In addition, the trial court merged defendant's convictions for resisting arrest and simple assault for purposes of sentencing, and then fined defendant $100 therefor. Defendant appeals.
Defendant seeks a reversal of his convictions based on the following grounds set forth in his brief:
I. DEFENDANT COULD NOT HAVE BEEN FOUND TO HAVE OPERATED THE VEHICLE IN VIOLATION OF N.J.S.A. 39:4-50 SINCE THE VEHICLE WAS INOPERABLE.
II. THE COURT MISAPPLIED THE HOLDING IN STATE v. STIENE, SINCE IN THIS CASE THERE WAS NO EVIDENCE THAT DEFENDANT "ATTEMPTED TO OPERATE" THE VEHICLE OR THAT THERE WAS "THE POSSIBILITY OF MOTION."

*416 III. THE STATE, WHILE PRESENTING EVIDENCE REGARDING DEFENDANT'S "INTOXICATION," FAILED TO PRESENT [EVIDENCE SHOWING], AND THE COURT FAILED TO FIND[,] THAT THE DEFENDANT VIOLATED N.J.S.A. 39:4-50, IN ACCORDANCE WITH THE REQUIREMENTS OF STATE v. TAMBURRO.

IV. THE COURT ERRED IN FAILING TO CONSIDER THE UNREFUTED EVIDENCE OF DEFENDANT'S EXPERT THAT DEFENDANT'S B.A.C. READING WAS BETWEEN .00% AND.025% AT THE TIME OF HIS ALLEGED OPERATION.
V. THE ACT OF ASSAULT ALLEGED BY THE STATE OCCURRED AFTER DEFENDANT'S ARREST, THEREFORE HIS CONVICTION ON BOTH SIMPLE ASSAULT AND RESISTING ARREST AMOUNTED TO DOUBLE JEOPARDY.
VI. THE COURT ERRED IN THAT IT EMPLOYED AN IMPROPER STANDARD OF PROOF AND BASED ITS DETERMINATION, IN LARGE PART, UPON SUPPOSITION AND SPECULATION AND NOT UPON THE PROOFS PRESENTED AT TRIAL, CONTRARY TO THE STANDARD OF PROOF BEYOND A REASONABLE DOUBT.
We have carefully considered these contentions, and all of the arguments advanced by defendant in support of them, and find that they are clearly without merit. R. 2:11-3(e)(2). Careful study of this matter satisfies us that there is sufficient credible evidence on the record as a whole to support defendant's conviction for operating a motor vehicle while under the influence of intoxicating liquor, as proscribed by N.J.S.A. 39:4-50(a), and we discern no sound basis or reason to interfere therewith. See State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964). Additionally, defendant's separate convictions for resisting arrest and simple assault are also amply supported by the record, and are entirely proper under the law. Thus, they will not be upset. Accordingly, the judgment under review is affirmed substantially for the reasons expressed by Judge Levy in his thorough letter opinion of February 14, 1992.
Nevertheless, we deem it appropriate to comment on certain of defendant's contentions concerning his driving while under the influence conviction. In this regard, we emphasize that N.J.S.A. 39:4-50(a) provides in pertinent part:
A person who operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or operates a motor *417 vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood... shall be subject [to certain penalties].
Within this provision, the term which is critical to the resolution of this matter is "operate." It is well settled that our courts are to give a broad construction to this term in the context of the driving while intoxicated statute, in order to further the salutary objectives of our Legislature. State v. Tischio, 107 N.J. 504, 513, 527 A.2d 388 (1987), appeal dismissed, 484 U.S. 1038, 108 S.Ct. 768, 98 L.Ed.2d 855 (1988); State v. Mulcahy, 107 N.J. 467, 480, 527 A.2d 368 (1987); State v. Sweeney, 77 N.J. Super. 512, 520, 187 A.2d 39 (App.Div. 1962), aff'd, 40 N.J. 359, 192 A.2d 573 (1963). Clearly, the primary goal that the Legislature sought to achieve by enacting the drunk-driving statute was "to curb the senseless havoc and destruction caused by intoxicated drivers." State v. Tischio, supra, 107 N.J. at 512, 527 A.2d 388. See State v. D'Agostino, 203 N.J. Super. 69, 72, 495 A.2d 915 (Law Div. 1984). The role that the courts should play in seeking to further the Legislature's aims in this area has been described by our Supreme Court in the following manner:
Our courts have not hesitated to give a broad construction to the terms of N.J.S.A. 39:4-50(a) when a narrow or literal interpretation would frustrate the fundamental regulatory goals underlying New Jersey's drunk-driving laws. For example, with respect to the most pivotal phrase of the statute  "operates a motor vehicle"  the courts of this State have consistently adopted a practical and broad interpretation of this language in order to express fully the meaning of the statute. A pragmatic definition of this term is necessary in order to effectuate the legislative intent to deal with the risk that intoxicated drivers will cause harm to themselves and to others who use the roadways of this State, a danger that frequently arises even before an intoxicated person may have put his or her car in motion. Thus, while the statute refers to the operation of a motor vehicle, actual operation is not required to satisfy this element of the statutory offense. See State v. Sweeney, 40 N.J. 359, 360-61 [192 A.2d 573] (1963) (a person may be "operating" a motor vehicle, within the meaning of N.J.S.A. 39:4-50(a), even when the vehicle has not been moved). We have consistently ruled that a defendant's intent to operate a motor vehicle can constitute "operation" within the meaning of the statute. See, e.g., State v. Sweeney, supra, 40 N.J. 359 [192 A.2d 573]; State v. Stiene, 203 N.J. Super. 275, 279 [496 A.2d 738] (App.Div. 1985); State v. Prociuk, 145 N.J. Super. 570, 574 [368 A.2d 436] (1976). The vigor of this interpretative theme is exemplified in our most recent decision, rendered this term, State v. Mulcahy, 107 N.J. 467 *418 [527 A.2d 368] (1987). There, the Court once again applied a pragmatic understanding of "operating a motor vehicle" consistent with the underlying legislative purpose. We ruled that the apparently intoxicated defendant's attempt to put his key into the automobile ignition constituted operation of a motor vehicle within the meaning of the drunk-driving statutes. We are thus strongly impelled to construe the terms of N.J.S.A. 39:4-50(a) flexibly, pragmatically and purposefully to effectuate the legislative goals of the drunk-driving laws. [State v. Tischio, supra, 107 N.J. at 513-14, 527 A.2d 388 (footnote omitted)].
Consequently, it is quite clear that the engine of a motor vehicle does not have to be engaged in order for there to be "operation." State v. Stiene, 203 N.J. Super. 275, 279, 496 A.2d 738 (App.Div. 1985); State v. Jeannette, 172 N.J. Super. 587, 589-90, 412 A.2d 1339 (Law Div. 1980). Nor does there have to be any movement of the vehicle in order to constitute "operation." State v. Sweeney, 40 N.J. 359, 360-61, 192 A.2d 573 (1963); State v. Stiene, supra, 203 N.J. Super. at 279, 496 A.2d 738. Instead, as stressed in State v. Tischio, supra, the focus of the "operation" inquiry revolves primarily around the defendant's intent to operate the vehicle. 107 N.J. at 513, 527 A.2d 388. This emphasis on intent has long been a part of the "operation" doctrine. See, e.g., State v. Daly, 64 N.J. 122, 125, 313 A.2d 194 (1973); State v. Sweeney, supra, 40 N.J. at 360-61, 192 A.2d 573; State v. Stiene, supra, 203 N.J. Super. at 278, 496 A.2d 738; State v. Prociuk, 145 N.J. Super. 570, 573-74, 368 A.2d 436 (1976).
It is with these underlying principles in mind that the modern test for "operation," which was set forth by this court in 1985, must be considered. In State v. Stiene, supra, we synthesized the New Jersey Supreme Court cases of State v. Daly, supra, and State v. Sweeney, supra, and set forth the following standard:
[W]hen one in an intoxicated state places himself behind the wheel of a motor vehicle and not only intends to operate it in a public place, but actually attempts to do so (even though the attempt is unsuccessful) and there is the possibility of motion, he violates the [drunk-driving] statute. [203 N.J. Super. at 279, 496 A.2d 738 (footnote omitted)].
In this case, defendant maintains that the State failed to prove any actual attempt on his part to "operate" his vehicle. *419 Defendant further contends that there was no "possibility of motion" when he entered his vehicle, because it was inoperable at that time due to a dead battery. Lastly, defendant asserts that the State failed to properly prove his intoxication under the controlling standards.
Initially, it is quite clear that defendant's claims regarding attempt are entirely without merit. The State's proofs clearly show, as the trial court found, that defendant intended to drive his car, and actually attempted to do so. Specifically, defendant seized his car keys from his wife following a shouting match in which he was screaming, "I want the keys, I'm taking the car," and she was responding, "[Y]ou can't drive the car." After having secured the keys, defendant proceeded to enter his vehicle, place the starter key in the ignition, and attempt to turn it over in order to start the car. He did this in full view of Sergeant Carella and Officer Campbell of the Port Authority Police Department. The only reason that defendant was unable to carry through to completion his effort to start the car was the somewhat fortuitous presence of Sergeant Carella, who was able to intervene and grab the keys before defendant could turn them beyond the accessory position. However, the fact of his attempt was plainly established and cannot be disputed. Moreover, the trial court found defendant's proffered reason for entering the vehicle, to use the car phone, to be wholly incredible. Thus, defendant's claims in this regard are frivolous.
Defendant also contends essentially that, even if he had the requisite intent, and he did actually attempt to drive his vehicle, he cannot be found to have "operated" the vehicle because it was inoperable at the time he was in it. He bases his claim of inoperability on his own testimony that the electronic door opener, dome light and car phone were not working at the time he entered the vehicle, coupled with the fact that the car required a jump start the next morning. The trial court found that defendant's testimony regarding the claimed failure of his *420 vehicle's electronic accessories was entitled to "little weight." Additionally, concerning the jump start, the trial court declared that it was "not convinced that proof that the car had to be jump started the next day require[d] the conclusion that it must have been impossible for the engine to start the day before." Therefore, the trial court found that the possibility of motion existed based on the possibility that the vehicle's engine may have started if defendant's attempt in this regard had not been thwarted by Sergeant Carella. Clearly, the police were not obligated to wait for this possibility of motion to become a reality, and a danger to the public, before intervening and arresting defendant. See State v. Mulcahy, supra, 107 N.J. at 480, 527 A.2d 368; State v. Jeannette, supra, 172 N.J. Super. at 592, 412 A.2d 1339. In fact, the mere possibility of such motion was enough to support a finding of "operation," and thus, a violation of the drunk-driving statute, under the circumstances present in this case. State v. Stiene, supra, 203 N.J. Super. at 279, 496 A.2d 738. Consequently, defendant's contentions in this vein are also lacking in merit.
Finally, we are satisfied that the State proved that defendant was intoxicated under the principles delineated in State v. Tamburro, 68 N.J. 414, 346 A.2d 401 (1975). There, our Supreme Court set forth the following overview of the intoxication requirement contained in N.J.S.A. 39:4-50(a):
The language "under the influence" used in the statute has been interpreted many times. Generally speaking, it means a substantial deterioration or diminution of the mental faculties or physical capabilities of a person whether it be due to intoxicating liquor, narcotic, hallucinogenic or habit-producing drugs. In State v. Johnson, 42 N.J. 146, 165 [199 A.2d 809] (1964), an intoxicating liquor case, we stated that "under the influence" meant a condition which so affects the judgment or control of a motor vehicle operator as to make it improper for him to drive on the highway. More recently, in State v. DiCarlo, 67 N.J. 321 [338 A.2d 809] (1975), we held that an operator of a motor vehicle was under the influence of a narcotic drug within the meaning of N.J.S.A. 39:4-50(a) if the drug produced a narcotic effect "so altering his or her normal physical coordination and mental faculties as to render such person a danger to himself as well as to other persons on the highway." Id. at 328 [338 A.2d 809]. [68 N.J. at 420-21, 346 A.2d 401].
*421 This being an intoxicating liquor case, the standards set forth in State v. Tamburro, supra and State v. Johnson, supra, are most relevant. Defendant maintains that the State presented no evidence "regarding what effect, if any, the consumption of alcohol [had] had on [his] physical and mental faculties." Instead, he asserts that the State merely relied on Sergeant Carella's "isolated conclusion" that he was intoxicated, a conclusion that defendant categorizes as "irrelevant." Moreover, defendant contends that "no evidence was presented ... as to whether the [] diminution in [his] mental or physical faculties made it `unsafe' for him to operate a motor vehicle."
Defendant's contentions in this regard are completely without merit. The State clearly did not rely solely on the conclusion of Sergeant Carella that defendant was intoxicated. However, this conclusion was in no way "irrelevant," as defendant claims. Certainly, there was ample evidence presented which demonstrated that both defendant's mental and physical faculties were materially affected, thus making it improper for him to drive.
In fact, evidence of defendant's intoxication in this regard abounds in this case. Specifically, Sergeant Carella recalled defendant's speech as being slurred when he initially contacted the police over the phone. The Sergeant also noted that defendant was loud and abrasive at this time. Later, Officer Schillizzi, also of the Port Authority Police Department, personally observed defendant to be dishevelled, and detected a strong odor of alcohol on his breath. Additionally, Officer Campbell noted that defendant was "very agitated," "very wobbly" and "yelling and screaming," as well as having "ruffled" clothing, "red and bloodshot" eyes and slurred speech. Moreover, defendant, upon noticing the presence of the officers who had reported to the scene, embarked on an unprovoked verbal barrage against them, calling them "a-holes" and telling them to "[g]et the f____ out of here." On top of this evidence, Sergeant Carella, a police officer with twenty-four years on the force, and nineteen years training on the breathalyzer, opined from *422 his personal observations of defendant at the scene that he fit the profile of an intoxicated person "without a doubt." Even defendant's own wife acknowledged his drunkenness, as she screamed at him, "[Y]ou can't drive the car," and later stated to Sergeant Carella, "I can't control him."
Clearly, this evidence is enough to meet the standards set forth in State v. Tamburro, supra and State v. Johnson, supra. For a person who acts in such a manner to assert that his mental and physical capabilities were not significantly diminished borders on the ludicrous. Certainly, defendant's judgment and control, as it related to the operation of a motor vehicle, was materially affected, since his judgment and control over his own actions had all but disappeared.
Affirmed.