THE STATE OF NEW HAMPSHIRE

v.

NEWELL OSGOOD

April 2, 1992

*John P. Arnold,* attorney general (*Ann M. Rice,* assistant attorney general, on the brief), by brief for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief for the defendant.

BATCHELDER, J.   The defendant appeals from his conviction, after a jury trial in Superior Court (*Dickson,* J.), of driving after having been declared an habitual offender in violation of RSA 262:23 (Supp. 1991). Arguing that in order to convict him the State had to prove that his motor vehicle was capable of operation, the defendant claims that the trial court's failure to so instruct the jury was error. We disagree and affirm.

On the afternoon of August 23, 1990, State Highway Enforcement Officer Roy Roberts was traveling northbound on Route 106 in Gilmanton when he observed the defendant traveling southbound on a motorcycle in the breakdown lane at a speed of approximately fifteen to twenty miles per hour. Noticing that the motorcycle had no license plate, Officer Roberts turned his vehicle around to investigate. He saw the defendant get off the motorcycle and start pushing it, eventually pushing it across the highway onto South Road. Officer Roberts pulled in behind him and requested his license and registration. The defendant stated that, as he had recently bought the motorcycle,

it was not yet registered and that his license had been taken by the State. After running a motor vehicle check, the officer learned that the defendant had been certified as an habitual offender and placed him under arrest. Later, after waiving his *Miranda* rights at the police station, the defendant admitted to Officer Roberts that he had recently been certified an habitual offender and told not to drive. He explained that he lived on South Road and had just picked up the motorcycle from Larry's Auction Barn, located approximately one hundred feet from where the officer first observed him, and was attempting to start it by rolling it down the road.

At trial Officer Roberts testified that, although he had not felt the motorcycle's engine or noticed heat from the exhaust pipe when he stopped the defendant, he believed it unlikely that the vehicle could have reached and maintained the speed he had observed by simply coasting from the Auction Barn. The defendant, on the other hand, testified that the motorcycle would not run and that, because it had no brakes, he had had to jump on it to slow it down.

On appeal, the defendant challenges the trial court's refusal to instruct the jury that it had to find that the motorcycle was operable in order to find that the prosecution had proved the element of operation. The State contends that the requested instruction was an erroneous statement of the law and was properly denied. We agree with the State.

The defendant was charged with a violation of RSA 262:23 (Supp. 1991), driving after having been declared an habitual offender. The trial court instructed the jury on the law in accordance with the definitions set forth in chapter 259 of the motor vehicle laws. Under the motor vehicle code, "drive" means "to operate or be in actual physical control of a motor vehicle . . . ." RSA 259:24. "Motor vehicle" is defined in pertinent part as "any self-propelled vehicle . . . ." RSA 259:60. Nothing in the statute requires that a motor vehicle actually be operable in order for an individual to "drive" it.

Notwithstanding the absence of an operability requirement in the statute, the defendant claims that our decision in *State v. Scanlon*, 110 N.H. 179, 263 A.2d 669 (1970), established such a requirement. In *Scanlon*, where the issue was whether the defendant had operated the car in the arresting officer's presence, we reversed the defendant's conviction for DWI on the basis that the mechanical inoperability of the vehicle's engine prevented a finding that the car had been "operated." *Id.* at 180, 263 A.2d at 670.

*Scanlon* was decided prior to the 1981 recodification of the motor vehicle laws. One express revision of the prior law was that "[w]herever the word 'operate' appeared when it referred to the operation of

a vehicle, it was changed to 'drive,' just as 'operator' was changed to 'driver' and 'operation' to 'driving.'" *See Commentary*, NEW HAMPSHIRE REVISED STATUTES ANNOTATED, Title 21, at 324 (1982). We may assume, without deciding, that prior to recodification, when "operation" was the *actus reus* of motor vehicle offenses, proof of mechanical operability of the vehicle was required for a finding of operation. The legislature, however, has since defined the proscribed activity, "driving," to include not only operation but also "be[ing] in actual physical control of a motor vehicle . . . ." RSA 259:24.

We have no difficulty concluding that one who puts a motorcycle in motion on the highway through coasting, even though the motor may be inoperable, is "in actual physical control" of the vehicle. Other courts faced with similar issues have agreed. *See State v. Griffin*, 152 Vt. 41, 563 A.2d 642 (1989) (despite alleged mechanical inoperability, defendant had actual physical control of coasting vehicle); *State v. Jeannette*, 172 N.J. Super. 587, 412 A.2d 1339 (1980) (where coasting motorcycle in motion and defendant controlling its movement, sufficient evidence of driving for DWI conviction); *Com. v. McPherson*, 368 Pa. Super. 274, 533 A.2d 1060 (1987) (same).

The habitual offender statute is intended to promote public safety "by removing irresponsible drivers from the highways of the State." *State v. O'Brien*, 132 N.H. 587, 592, 567 A.2d 582, 585 (1989) (quotation omitted). The danger to the public occurs when an habitual offender places a motor vehicle, "whether it is powered by its engine or gravity," *Jeannette,* 172 N.J. Super. at 590, 412 A.2d at 1341, in motion on the highway. We hold that the trial court's refusal to instruct the jury on operability was not error.

*Affirmed.*

All concurred.