(20 P.3d 82)

No. 84,339

STATE OF KANSAS, *Appellee*, v. JAMES E. THOMAS, *Appellant*.

Opinion filed March 2, 2001.

*Rick Kittle*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Debra S. Peterson, Elizabeth Reimer*, assistant district attorneys, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GREEN, P.J., BEIER, J., and DAVID PRAGER, Chief Justice Retired, assigned.

GREEN, J.: James E. Thomas appeals his convictions of driving while a habitual violator, no proof of liability insurance, and driving

without an assigned tag. On appeal, Thomas argues (1) the evidence is insufficient to sustain his convictions; (2) the trial court erred in instructing the jury; and (3) the trial court erred in denying his *Batson v. Kentucky,* 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), challenge to the State's use of peremptory strikes. We disagree and affirm.

On May 30, 1999, Officer Michael Conrady and his partner observed a vehicle with no tag that was traveling approximately 15-20 miles per hour. The officers observed the car turn onto another street and shortly thereafter turn onto a driveway. After the vehicle stopped, the officers approached the driver, James Thomas, and asked for his driver's license and proof of insurance. Thomas stated that he did not have a driver's license or proof of insurance and that he was on probation for felony driving while suspended. The officers verified that Thomas' driver's license was revoked and that he was on probation for felony driving while suspended. Thomas told the officers that the vehicle did not run. Thomas, a mechanic, indicated that he was going to fix the car so he had pushed it to get it going and then had coasted it down the hill and around the corner.

Thomas was charged with single counts of felony driving while a habitual violator, no proof of liability insurance, windshield materially obstructed, and driving without an assigned tag.

At Thomas' jury trial, Officer Conrady testified that he did not hear the engine of the car running. He also testified that the street where Thomas was driving was downhill, so it was possible that Thomas could have pushed the car to get it going, jumped into it, and traveled downhill to his driveway. Officer Conrady testified that he did not ask Thomas to try to start the car as proof it could not run.

Garvis Williams testified on Thomas' behalf. Williams testified that the car in question was her 1987 Chevy Nova and that the vehicle did not run. Williams testified that she offered to pay Thomas to fix her vehicle. She said that her car was parked at her aunt's house, which was approximately a third of a mile from Thomas' residence. She agreed that the windshield of the vehicle was cracked and that the car did not have a license plate.

Thomas testified that while the vehicle was at Williams' aunt's residence he put in a new battery and attempted to start the car, but the car would not run. He stated that his mechanic's tools were located in his garage, so he pushed the car to get it rolling and then steered it onto his driveway.

The jury found Thomas guilty of driving while a habitual violator, no proof of insurance, and driving without an assigned tag. He was sentenced to 11 months' confinement to run concurrent with sentences imposed in two other cases.

### Sufficiency of the Evidence

Thomas first contends that the evidence is insufficient to sustain his convictions. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

Thomas claims that the evidence is insufficient because the State failed to prove beyond a reasonable doubt that he was operating a motor vehicle. To establish the driving while a habitual violator charge, the State was required to prove that Thomas operated "a *motor vehicle* in this state while [his] driving privileges [were] revoked pursuant to K.S.A. 8-286 and amendments thereto." (Emphasis added.) K.S.A. 2000 Supp. 8-287. To prove the offense of no proof of liability insurance, the State had to prove that Thomas failed to "display, upon demand, evidence of financial security to a law enforcement officer" while he was "operating a *motor vehicle* upon a highway." (Emphasis added.) K.S.A. 40-3104(d). In addition, to prove that Thomas violated K.S.A. 2000 Supp. 8-142, the State had to establish that Thomas operated upon a highway "any *vehicle*, as defined in K.S.A. 8-126, and amendments thereto, which . . . does not have attached thereto and displayed thereon the license plate or plates assigned thereto by the division for the current registration year." (Emphasis added.)

"Motor vehicle" is defined as "every vehicle, other than a motorized bicycle or a motorized wheelchair, which is self-propelled."

K.S.A. 2000 Supp. 8-126(b). In addition, "vehicle" is defined as "[e]very device in, upon or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks." K.S.A. 2000 Supp. 8-126(a).

Although Kansas appellate courts have not addressed the issue of whether a vehicle must be operable to constitute a motor vehicle, the question has been considered in other jurisdictions. For example, *Rosenbaum v. Commonwealth*, 12 Va. App. 61, 402 S.E.2d 498 (1991), addressed whether the defendant was properly convicted of driving while a habitual offender. The defendant was sitting on the seat of a motorcycle touching two wires together in an attempt to make the engine turn over while parked in the emergency lane of an interstate. The *Rosenbaum* court found that this evidence was sufficient to support the defendant's conviction even though he never drove or moved the motorcycle, the motorcycle was inoperable, and the defendant was merely attempting to start the motorcycle. The court rationalized that "[t]he fact that the motorcycle did not start or was incapable of starting is irrelevant." In so holding, the *Rosenbaum* court relied on *Nicolls v. Commonwealth*, 212 Va. 257, 259, 184 S.E.2d 9 (1971), which held that " '[e]very vehicle . . . which is self-propelled or designed for self-propulsion' is contemplated under the law as a motor vehicle." 12 Va. App. at 64.

Similarly, *State v. Osgood*, 135 N.H. 436, 605 A.2d 1071 (1992), held that it is not necessary that a motor vehicle actually be operable in order for an individual to drive it for purposes of violating the driving while a habitual offender statute. In *Osgood*, an officer observed the defendant traveling on a highway in the breakdown lane at a speed of approximately 15 to 20 miles per hour. The officer noticed that the motorcycle did not have a license plate. When the officer stopped the defendant, who had been certified a habitual offender, the defendant stated that he recently purchased the motorcycle and he was attempting to start it by rolling it down the road.

The *Osgood* court affirmed the defendant's conviction of driving while a habitual offender, finding that "one who puts a motorcycle

in motion on the highway through coasting, even though the motor may be inoperable, is 'in actual physical control' of the vehicle." 135 N.H. at 438; see *State v. Griffin*, 152 Vt. 41, 563 A.2d 642 (1989) (holding that despite alleged mechanical inoperability, the defendant had actual physical control of coasting vehicle). The *Osgood* court reasoned that "[t]he habitual offender statute is intended to promote public safety 'by removing irresponsible drivers from the highways of the State.' [Citation omitted.] The danger to the public occurs when an habitual offender places a motor vehicle, 'whether powered by its engine or gravity,' in motion on the highway. [Citation omitted.]" 135 N.H. at 438.

We find the rationale applied in *Rosenbaum* and *Osgood* persuasive and interpret K.S.A. 2000 Supp. 8-126(b) as including within the definition of "motor vehicle" those devices which are designed for self-propulsion. An individual operates a motor vehicle when he or she puts a self-propelled device, other than a motorized bicycle or a motorized wheelchair, into motion on a public thoroughfare, whether powered by its engine or by coasting. The 1987 Chevy Nova Thomas operated constituted a motor vehicle because it was designed for self-propulsion and was put into motion through coasting.

Moreover, we read K.S.A. 2000 Supp. 8-126(a) as including within the definition of "vehicle" an inoperable motor vehicle traversing a public thoroughfare by coasting. Because the 1987 Chevy Nova Thomas operated was an inoperable motor vehicle which traversed by coasting, it constitutes a "vehicle." Accordingly, Thomas' convictions are supported by sufficient evidence.

## Jury Instructions

Thomas next contends that the jury instruction stating the elements of driving while a habitual violator was clearly erroneous because it allowed the jury an alternate means of convicting him of that crime which was not included in the statute. Thomas, however, failed to object to the instruction. Accordingly, our standard of review is as follows:

"[N]o party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating

distinctly the matter to which he or she objects and the grounds of his or her objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 22-3414. Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Henry*, 263 Kan. 118, 131, 947 P.2d 1020 (1997).

The trial court instructed the jury that to convict Thomas of driving while a habitual violator, the State had to prove that Thomas "drove or attempted to drive a motor vehicle." Thomas contends that it was error to instruct the jury in this manner because the driving while a habitual violator statute does not include attempting to drive a motor vehicle as a means of committing the offense.

As noted previously, the offense of driving while a habitual violator is committed when an individual operates "a motor vehicle in this state while one's driving privileges are revoked pursuant to K.S.A. 8-286 and amendments thereto." Our interpretation of this statute is a question of law subject to unlimited review. *State v. Patterson*, 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

K.S.A. 2000 Supp. 8-287 specifies that a habitual violator may only violate the statute by operating a motor vehicle. Unlike our driving while intoxicated statute (K.S.A. 2000 Supp. 8-1567), the driving while a habitual violator statute does not criminalize attempting to operate a motor vehicle. Stated another way, K.S.A. 2000 Supp. 8-287 does not provide an alternative means for committing the offense of driving while a habitual violator. Moreover,

our rules of statutory construction prevent us from reading into the statute an alternative means for committing the offense.

Because attempting to drive a motor vehicle while a habitual violator is not criminalized by K.S.A. 2000 Supp. 8-287, the trial court misstated the law when instructing the jury. Curiously, the PIK instruction for driving while a habitual violator contains language similar to that used by the trial court. PIK Crim. 3d 70.11 (1999 Supp.). It is unclear why the PIK contains "attempted to drive" language since K.S.A. 2000 Supp. 8-287 does not criminalize attempting to drive while a habitual violator. Accordingly, we recommend trial courts refrain from using this part of the PIK language.

While the jury instruction in question constituted a misstatement of the law, we must determine whether there is a real possibility the jury would have rendered a different verdict had the trial error not occurred. The instruction would be clearly erroneous if the jury could have reasonably acquitted Thomas of driving while a habitual violator had the "attempted to drive" language not been included in the instruction. However, there was no evidence presented to the jury that Thomas was merely attempting to drive the vehicle. Instead, the evidence showed that Thomas was in actual physical control of the vehicle in that he maneuvered it approximately a third of a mile by steering it and applying the brakes when necessary. See K.S.A. 8-1416 (defining "driver" as "every person who drives or is in actual physical control of a vehicle"). The facts presented in this case established that Thomas was in actual physical control of the 1987 Chevy Nova and, as a result, he was driving it rather than attempting to do so.

A jury instruction is not constitutionally flawed where one of the possible bases of conviction was neither unconstitutional nor illegal but "merely" unsupported by sufficient evidence. *Griffin v. United States*, 502 U.S. 46, 59-60, 116 L. Ed. 2d 371, 112 S. Ct. 466 (1991). Here, although the jury instruction constituted a misstatement of the law by reason of the attempting to drive language, this inappropriate theory of conviction was not supported by the evidence. We can reasonably assume that the jury did not behave capriciously and convict on a theory in which there was no evidence, when

strong evidence existed supporting the theory that Thomas drove the vehicle. See *State v. Ice*, 27 Kan. App. 2d 1, 7, 997 P.2d 737 (2000). As a result, although the trial court erred in instructing the jury, the instruction was not clearly erroneous because no real possibility existed that the jury would have rendered a different verdict had the trial error not occurred.

Thomas also contends that the trial court erred when it failed to instruct on attempted driving while a habitual violator. Thomas, however, did not request such an instruction. "No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objections unless the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 2000 Supp. 22-3414(3).

It cannot be said that the failure to instruct on attempted driving while a habitual violator was clearly erroneous because, as we previously determined, the evidence did not support a finding that Thomas attempted to drive the vehicle. As a result, the trial court did not err in instructing the jury.

*Batson Challenge*

Thomas further argues that the State used peremptory strikes to exclude potential jurors on the basis of race. Our standard of review is whether the trial court abused its discretion in determining the challenged strikes were constitutionally permissible. *State v. Vargas*, 260 Kan. 791, Syl. ¶ 1, 926 P.2d 223 (1996). Because the trial judge's findings in the context under consideration turn on evaluation of the credibility of the prosecutor, we give those findings great deference. *State v. Walston*, 256 Kan. 372, 378, 886 P.2d 349 (1994).

The United States Supreme Court has outlined a three-part test to determine if the State's use of peremptory strikes violates the Equal Protection Clause. The Kansas Supreme Court restated the test in *State v. Poole*, 252 Kan. 108, Syl. ¶ 1, 843 P.2d 689 (1992):

"First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite

showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination."

The second step of the *Batson* process does not demand an explanation by the prosecutor that is persuasive, or even plausible, but one that is merely facially valid. Further, unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. The ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike. *Vargas*, 260 Kan. 791, Syl. ¶ 3.

In the present case, the State used three of its peremptory strikes to remove three of the four African-Americans from the jury. Thomas is an African-American. Thomas concedes that the removal of two African-Americans from the jury was proper but insists that the prosecutor's reasons for striking a third African-American, Ms. B, were constitutionally insufficient.

The State noted to the trial court that Ms. B was removed because she gave the prosecutor "very funny, weird looks and she wasn't responding very well." Thomas alleges that this response is not sufficient because Ms. B responded to the questions appropriately. Even though Ms. B's responses may have been appropriate, we have no way of knowing whether the State believed Ms. B or what her demeanor was when she answered the questions. The State provided racially neutral reasons for the removal of Ms. B. Moreover, Thomas failed to show that these race neutral reasons were a pretext for discrimination. As a result, the trial court did not abuse its discretion in denying Thomas' *Batson* challenge to the removal of Ms. B.

Affirmed.