COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-297-CR

 

 

RANDALL DORNBUSCH                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.      Introduction








Appellant Randall Dornbusch
appeals his conviction for misdemeanor driving while intoxicated.  Appellant waived his right to a jury
trial.  The trial court found Appellant
guilty and sentenced him to 120 days= confinement, probated the sentence for fifteen months, and assessed a
$300.00 fine.  In three points, Appellant
challenges the legal and factual sufficiency of the evidence to support his
conviction, and he challenges the constitutionality of section 49.04 of the
Texas Penal Code.  See Tex. Penal Code Ann. ' 49.04 (Vernon 2003).  We
affirm.  

II.     Evidence

The parties presented the
following evidence at trial.  Highland
Village police sergeant Sheri Morrison testified that she was checking on a
business around 12:30 a.m. on the morning of December 2, 2006.  Morrison saw Appellant=s vehicle in the parking lot of a nearby Applebee=s restaurant.  Morrison
testified that the vehicle caught her attention because its headlights were on,
it was in the back of the parking lot, and it was Aparked oddly.@  Morrison did not immediately investigate
Appellant=s vehicle
because she was still engaged in checking on the nearby business.  Approximately forty-five minutes later,
Morrison again observed Appellant=s vehicle in the same spot with the headlights still on.  Morrison called for backup.  Highland Village police officer Alicia
Bautista Gonzales responded to the call. 









Gonzales testified that when
she arrived, Appellant=s vehicle
was in the back of the Applebee=s parking lot, and its lights were on. 
Gonzales and Morrison approached Appellant=s vehicle and noticed the engine was running.  Morrison testified that she could tell the
engine was running because it was cold outside and she could see the exhaust,
but she could not see any indication that the brake lights were activated.  Both Gonzales and Morrison testified that
loud music was emanating from Appellant=s vehicle.  

Gonzales said that as she
approached she could see Appellant Ain the driver=s seat
hunched over the steering wheel.@  Both officers testified that
it took multiple efforts of tapping on the window and speaking to Appellant for
him to arouse from his hunched position. 
Gonzales noticed a smell of alcohol in the vehicle.  Morrison testified that when she asked
Appellant if he had been drinking, he initially denied that he had been, but
later admitted to the officers that he had been drinking alcohol in Applebee=s prior to getting into his vehicle. 
       Gonzales testified that
Appellant=s eyes were
bloodshot, his speech was slurred, and he appeared disoriented.  She asked Appellant if he had Aany medical problems.@  Appellant denied any medical
problems.  Gonzales admitted that she
informed Appellant that she could be looking at his situation from either a
medical or criminal aspect.  Gonzales
testified that when Appellant asked what criminal aspect she was investigating,
Gonzales responded Apublic
intoxication.@  Gonzales then asked Appellant to exit his
vehicle.  








Gonzales performed a number
of field-sobriety tests including the horizontal gaze nystagmus test, the
one-legged stand, and the walk and turn. 
She testified that she found all six clues when performing the horizontal
gaze nystagmus test.  According to Gonzales,
Appellant was unable to complete the walk and turn or the one-legged stand,
however, Gonzales testified that she did observe four clues during the walk and
turn test.  Gonzales said that she
discontinued these tests before their completion because Appellant had fallen
down and she feared he might hurt himself. 
The officers arrested Appellant. 

Morrison could not recall who
turned off Appellant=s
vehicle.  But she testified that at some
point in the encounter, she tried to remove the keys from the ignition but
could not.  Morrison said the officers
asked Appellant how to remove the keys and he responded that the vehicle had to
be in park in order for the keys to be removed from the ignition.  Concerning whether Appellant=s car was in park, the trial transcript contains this testimony by
Morrison:  

[Morrison]:  
. . . And [Appellant] said as long as the vehicle is in park, that
the key should come right out.  So it was
at that point that it was a -- you know, it was an automatic.  And at that point I pressed it in and pushed
it forward and realized that the car had been in drive and that that=s why
the keys wouldn=t
come out.  So as soon as I slipped it
into park, the keys came on out.

 

[State]: Okay. 
So the car was actually in drive?

 

[Morrison]: Yes, ma=am. 

 

[State]: Do you know what was preventing -- I
mean, from your observation, do you know what was preventing the car from
actually rolling or driving?

 

[Morrison]: It was touching the curb in the
parking place.

 

[State]: Okay.  The wheels were
up against the curb?

 








[Morrison]: Uh-huh.

 

[State]: Okay. 
But it was in drive?

 

[Morrison]: It was not parked, no.  I couldn=t tell you if it was slipped
up on the edge of drive or edge of neutral, but it was not in park. 

 

During cross-examination,
Morrison further clarified her testimony concerning whether Appellant=s vehicle was in park or drive:

[Appellant=s attorney]: Now, it=s
your testimony to [the trial court] that the car was in drive the entire time?

 

[Morrison]: My testimony is that the car was not
in park.  I couldn=t
tell you.  When I went to move the gear
shift, I didn=t
look down and see, you know, if it was sitting on D, if it was sitting on N, or
if it was sitting on P.  Obviously I
thought the car was in park, or I wouldn=t have been messing with
somebody that was, you know, coming out of it.

 

[Appellant=s attorney]: Right.

 

[Morrison]: When I moved the gear shift, it
moved.  It physically moved in my hand to
move forward.

 

. . . . 

 

[Morrison]: I mean, I couldn=t
tell you if it was [in drive] or was not. 
I knew it wasn=t in
park.  I knew it moved.  It moved a good amount in my hand.

 








Morrison testified that after
placing Appellant under arrest, she searched his vehicle.  She found a bottle of vodka that had not been
opened.  Morrison also found to-go
containers, but testified she could not identify what restaurant they were
from.  She also found a cup containing a @purple or dark liquid@ that smelled of alcohol.  

Appellant testified to his
version of the events.  He testified that
Friday,  December 1, 2006, at roughly
10:30 p.m., he had gone to Applebee=s to meet his girlfriend for dinner. 
His girlfriend never showed.  He
said that while waiting, he consumed Aa few drinks@ and ordered
food.  He eventually got the food to go
and took it to his car.  Appellant
testified that at that point, sometime near midnight, he reasoned that he had Aa couple too many@ alcoholic beverages while waiting Aand didn=t feel that
[he] could make the drive home.@ Appellant stated that his plan was Ato sit there and I guess wait until I felt like I could drive home.@  He also testified that he had
not consumed any alcohol prior to being at Applebee=s. 








Appellant further testified
that he turned the car=s engine on
for warmth because it was cold outside. 
According to Appellant, his vehicle=s lights were on because his vehicle has a feature where the lights
come on automatically when it is dark outside. 
When questioned about what was required to remove the keys from the
ignition, Appellant testified that the car had to be in park and a foot had to
be on the brake.  When questioned about
the cup of dark liquid, Appellant testified, AI don=t know what
was in the cup.  And if I did [consume
any alcohol once inside the vehicle after leaving Applebee=s], it was whatever was in the cup, if it was a beverage.@  When asked by the State
whether he had the music loud in an effort to stay awake, he replied, ANo.@  When asked why he didn=t turn off the lights after sitting there for so long, Appellant
replied AI just didn=t think
about it, to be honest with you.@  

The sole issue contested by
Appellant at trial was whether he had Aoperated@ the
vehicle.  In finding Appellant guilty,
the trial court stated:

[I]f
I take the State=s
assumption that he had put the car in gear, I could say, oh, yippee, the facts
are easy, you know, and I can find him guilty and go home . . . . But
based on my looking at the law and [Appellant] was behind the wheel, the car
was running -- I do not care about the lights, I don=t
care about the radio.  The question, was
the vehicle running.  I=m
finding his foot was not on the brake, his foot was not on the gas, and the car
never moved from that spot.  But based on
what I=ve
looked at under the case law, I=m finding [Appellant] guilty
of the charge based on that fact scenario. 


 

III.     Discussion

A.     Legal and Factual Sufficiency

In his first two points,
Appellant complains that the evidence is legally and factually insufficient to
prove beyond a reasonable doubt that he operated his vehicle.

1.     Standards of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414B15, 417; Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
judgment.  Watson, 204 S.W.3d at
417.

2.     Application of Law to Facts








AA person
commits an offense if the person is intoxicated while operating a motor vehicle
in a public place.@  Tex.
Penal Code Ann. ' 49.04(a).  In challenging the legal and factual
sufficiency of the evidence to support his conviction, Appellant does not
dispute that he was intoxicated at the time the officers found him in his car.  Rather, Appellant argues that, from the
totality of the circumstances, the evidence is not legally or factually
sufficient to prove that he Aoperated@ his vehicle
while he was intoxicated.   

There is no statutory
definition of the term Aoperate.@  Barton v. State, 882
S.W.2d 456, 459 (Tex. App.CDallas 1994, no pet.).  However,
the court of criminal appeals has held that, to find operation of a motor
vehicle, Athe totality
of the circumstances must demonstrate that the defendant took action to affect
the functioning of his vehicle that would enable the vehicle=s use.@  Denton v. State, 911 S.W.2d 388, 390 (Tex.
Crim. App. 1995). In reaching its holding, the court repeated the reasoning
enunciated in Barton:

We do
not accept the contention that to operate a vehicle within the meaning of the
statute, the driver=s
personal effort must cause the automobile to either move or not move.
Purposely causing or restraining actual movement is not the only definition of >operating= a
motor vehicle. In other words, we examine the totality of the
circumstances to determine if [the defendant] exerted personal effort upon his
vehicle [ . . . ] for its intended purpose.

 








Id. at
389 (emphasis added) (quoting Barton, 882 S.W.2d at 459); see also
Hearne v. State, 80 S.W.3d 677, 680 (Tex. App.CHouston [1st Dist.] 2002, no pet.) (holding that a reviewing court is
to look at the totality of circumstances surrounding the entire incident in
question to ascertain whether the trial court properly determined if operation
had occurred).  Under this standard, Aoperating@ a motor
vehicle is interpreted very broadly.  Barton,
882 S.W.2d at 459; see Strong v. State, 87 S.W.3d 206, 215 (Tex. App.C Dallas 2002, pet. ref=d).  Because Aoperating a motor vehicle@ is defined so broadly, any action that is more than mere preparation
toward operating the vehicle would necessarily be an Aaction to affect the functioning of [a] vehicle in a manner that would
enable the vehicle=s use.@  Strong, 87 S.W.3d at
216 (citing Barton, 882 S.W.2d at 459). 
Any action would either not be more than mere preparation or it would
fall within the broad definition of Aoperating a motor vehicle.@  Strong, 87 S.W.3d at
216 .








Numerous cases have upheld
DWI arrests or convictions under the totality of circumstances test even though
the person Aoperating@ the motor vehicle was initially found to be asleep or
unconscious.  For instance, persons
asleep or unconscious were found to be Aoperating@ their motor
vehicle when the vehicle was stopped by the roadway with its right front tire
against the curb and engine running, gearshift in ADrive,@ and lights
on, Freeman v. State, 69 S.W.3d 374, 375B76 (Tex. App.CDallas 2002,
no pet.); stopped in a moving lane of traffic with the engine running and the
vehicle=s owner in the driver=s seat, Hearne, 80 S.W.3d at 680; and stopped on a roadway with
the engine running, lights on, and the vehicle=s operator sitting behind the steering wheel, State v. Savage,
905 S.W.2d 272, 273 (Tex. App.CSan Antonio 1995), aff=d, 933 S.W.2d 497 (Tex. Crim.
App.1996).

Furthermore, prior to the
adoption of the totality of circumstances test, persons who were asleep or
unconscious were found to be Aoperating@ their motor
vehicle when the vehicle was stopped in the middle of the road with the engine
running, gearshift in ADrive,@ and operator slumped behind the steering wheel with his foot on the
brake, Ray v. State, 816 S.W.2d 97, 98 (Tex. App.CDallas 1991, no writ); stopped in the roadway with the engine running,
lights on, and the vehicle=s owner sitting behind the steering wheel, Pope v. State, 802
S.W.2d 418, 420 (Tex. App.CAustin 1991, no writ); stopped in the roadway facing oncoming traffic
with the engine running, lights on, and operator asleep in the driver=s seat with his foot on the brake, Hernandez v. State, 773
S.W.2d 761, 762 (Tex. App.CSan Antonio 1989, no writ); and found half in a ditch and half on a
farm‑to‑market road with the operator alone behind the steering
wheel with both feet on the floorboard beneath the steering wheel, Reynolds
v. State, 744 S.W.2d 156, 158B59 (Tex. App.CAmarillo
1987, writ ref=d).








Appellant argues that these
cases are distinguishable from his case because the facts of each of these
cases indicate recent operation of a vehicle on a roadway at some point.[1]  However, a parking lot at a public place is
not legally different than a roadway for purposes of a DWI arrest or
conviction, and Appellant does not argue otherwise.  See, e.g., Shaub v. State, 99 S.W.3d
253, 256 (Tex. App.CFort Worth
2003, no pet.).

        Appellant further argues that he is being
punished for his decision to Asleep off@ his
intoxication rather than driving home drunk and that the only reasonable
inference to be drawn from the evidence is that he used his vehicle to keep
warm and not that he intended or actually did operate his vehicle.  This court agrees that it is better to sleep
off intoxication rather than engage in the pervasive societal problem of drunk
driving.  See Hollin v. State, 227
S.W.3d 117, 122 (Tex. App.CHouston [1st Dist.] 2006) (noting that DWI laws Ahave as their goals both prevention, punishment, and the removal of
drunk drivers from the streets by incarceration.@)  But whether Appellant was
merely keeping warm or Aoperating@ his vehicle was a fact question for the trial court to resolve, and
the trial court resolved it against him.








To ascertain whether the
trial court=s resolution
of this question was supported by legally and factually sufficient evidence, we
examine the totality of circumstances to determine if Appellant took action to
affect the functioning of his vehicle that would enable the vehicle=s use.  Denton, 911
S.W.2d at 389.  In this case, all parties
agree that Appellant=s vehicle
was found in the back of Applebee=s parking lot with the headlights on, the engine running, the radio
playing loudly, and Appellant sitting in the driver=s seat either asleep or passed out. 
Further, there was testimony indicating that the vehicle was not in park
and that the only thing keeping the vehicle from moving was the curb.[2]  We hold that the evidence, viewed in light
most favorable to the verdict, together with reasonable inferences therefrom,
is legally sufficient to show that Appellant operated his vehicle while
intoxicated.  We overrule Appellant=s first point.








Further, after viewing all
the evidence in a neutral light, we hold that the proof of guilt is not so
obviously weak as to undermine confidence in the verdict and is not greatly
outweighed by contrary proof.  The
evidence is therefore factually sufficient to show that Appellant operated his
vehicle while intoxicated.  We overrule
Appellant=s second
point.  

B.     Constitutionality of Section 49.04

In his third point, Appellant
challenges the facial validity of section 49.04 of the Texas Penal Code.  See Tex.
Penal Code Ann. ' 49.04.  The gist of Appellant=s argument, as can be gleaned from both the title of his third point
and the analysis in his brief, is that the DWI statute=s provision of Aoperating@ exceeds the scope of its title, ADriving While Intoxicated.@[3]  See id. 








Appellant may not challenge
the sufficiency of the caption because the Texas Constitution makes it unlawful
for this court to declare the statute void on the basis of an insufficient
title.  Tex. Const. art. III, ' 35(c); see Baggett v. State, 722 S.W.2d 700, 702 (Tex.
Crim. App. 1987) (acknowledging that a court no longer has the power to declare
an act of the legislature unconstitutional due to the insufficiency of its
caption).  Therefore, we overrule
Appellant=s third
point.   

IV.    Conclusion

Having overruled Appellant=s three points, we affirm the trial court's 

judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   GARDNER, WALKER, and MCCOY, JJ.

 

MCCOY,
J. filed a concurring opinion.

 

PUBLISH

 

DELIVERED:
July 24, 2008

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-07-297-CR

 

 

RANDALL DORNBUSCH                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

 

                                              ------------

 

                                  CONCURRING
OPINION

 

                                              ------------

The purpose of section 49.04
of the Texas Penal Code is articulated in its title, ADriving While Intoxicated.@  The phraseology of the
statute, however, utilizes the word Aoperating,@ instead of Adriving,@ and is more
expansive, but in my view, still under the umbrella of the logical and laudable
intent of the statuteCto protect
people and property from vehicles driven by intoxicated persons.  








Here, the vehicle had to be
turned off by first placing the transmission in park, which was accomplished by
one of the officers on the scene. 
Logic  therefore instructs that
the car was in park when the key was first inserted by the driver to start the
car.  Therefore, the car=s transmission was removed from park by the driver to place it in the
position found by the officer, and this action, in my view, is what constituted
Aoperating@ the
vehicle.  Had the driver simply wanted to
enter his vehicle to warm up on a cold night, to sleep off his intoxicated
state, or to do both, which are actions to be taken without leaving the parking
lot, then there would have been no need to engage the transmission.  Hence, I believe his actions fell under the
ambit of the statute, and I concur with the majority=s resolution of Dornbusch=s first and second points and agree with their resolution of his third
point.

 

BOB MCCOY

JUSTICE

 

PUBLISH

 

DELIVERED:  July 24, 2008

 











[1]Appellant
also argues that this case is similar to a pair of cases from the Supreme Court
of New Jersey and that we should reverse Appellant=s
conviction by applying the test found in those cases to the facts of this case.
See State v. Sweeney, 192 A.2d 573, 573 (N.J. 1963); State v. Daly,
313 A.2d 194, 195 (N.J. 1973).  However,
these cases are inapplicable to this case because New Jersey does not apply the
totality of circumstances test that the court of criminal appeals ascribes to;
rather, New Jersey uses an Aintent to move or drive@
test.  Denton, 911 S.W.2d at 389; Daly,
313 A.2d at 195. 





[2]Appellant
states twice that the trial court made an explicit finding that the vehicle was
not in gear.  However, as the State
points out, the trial court did not make a finding regarding whether Appellant=s car
was in a specific gear.





[3]Although
Appellant cites federal cases involving constitutional issues of overbreadth
and vagueness, he fails to analyze these doctrines.  Thus, Appellant has waived these issues and
we decline to address them.  See
Strange v. Cont=l
Cas. Co., 126 S.W.3d 676, 678 (Tex. App.CDallas
2004, pet. denied), cert. denied, 543 U.S. 1076 (2005) (holding that an
issue on appeal unsupported by argument presents nothing for the court to
review); see also Fredonia State Bank v. Gen. Am. Life Ins.
Co., 881 S.W.2d 279, 284B85 (Tex. 1994) (discussing Along-standing
rule@ that
point may be waived due to inadequate briefing); Tello v. Bank One, N.A.,
218 S.W.3d 109, 116 (Tex. App.CHouston [14th Dist.] 2007, no
pet.) (A[W]e
know of no authority obligating us to become advocates for a particular
litigant through performing their research and developing their argument for
them.@); Hall
v. Stephenson, 919 S.W.2d 454, 467 (Tex. App.CFort
Worth 1996, writ denied) (holding that an inadequately briefed point may be
waived on appeal).