NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5280-15T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

MELISSA A. MERSMANN, a/k/a
MELISSA ARRINGTON,

 Defendant-Appellant.
_________________________

 Argued telephonically July 13, 2017 – Decided October 11, 2017

 Before Judges Simonelli and Carroll.

 On appeal from the Superior Court of New
 Jersey, Law Division, Monmouth County,
 Indictment No. 15-01-0152.

 Mitchell A. Ansell argued the cause for
 appellant (Ansell Grimm & Aaron, PC,
 attorneys; Mr. Ansel1, on the brief).

 Monica do Outeiro, Assistant Prosecutor,
 argued the cause for respondent (Christopher
 J. Gramiccioni, Monmouth County Prosecutor,
 attorney; Mary R. Juliano, Assistant
 Prosecutor, of counsel and on the brief).

PER CURIAM
 Following the denial of her motion to suppress, defendant

Melissa A. Mersmann pled guilty to fourth-degree operating a motor

vehicle during a period of suspension by operating a motor vehicle

while her license was suspended for a second or subsequent

violation of N.J.S.A. 39:4-50 or N.J.S.A. 39:4-50(a), contrary to

N.J.S.A. 2C:40-26(b). The court sentenced defendant to a one-year

term of probation with a mandatory 180 days to be served in the

county jail. The judge released defendant on her own recognizance

and granted bail pending appeal.

 On appeal, defendant raises the following contentions:

 I. THE TRIAL COURT ERRED IN DENYING
 DEFENDANT'S MOTION TO SUPPRESS BECAUSE
 THE MOTOR VEHICLE STOP AND INVESTIGATIVE
 DETENTION WAS NOT SUPPORTED BY A
 REASONABLE ARTICULABLE SUSPICION OF A
 MOTOR VEHICLE OFFENSE.

 II. THE TRIAL COURT ERRED IN FINDING THAT THE
 DEFENDANT WAS THE OPERATOR OR HAD THE
 INTENT AND ABILITY TO OPERATE THE FORD
 EXPLORER.

We reject these contentions and affirm.

 I.

 We derive the following facts from the record. On the evening

of October 1, 2014, Ciara Seig called 9-1-1 and reported that she

was traveling on Route 36 in Union Beach and saw someone driving

a white Ford Explorer "all over the road like they're drunk . . .

all over the road, like, swerving in and out of the lanes[,]"

 2 A-5280-15T3
using "no blinker[,]" "almost crashing into the curb[,]" and "like

crazy driving . . . really like all over." Seig gave a description

of the vehicle, its license plate number, and its route of travel.

She followed the Explorer to the parking lot of the Shore Café and

saw the driver and passenger exit the vehicle. She stayed on the

phone with the 9-1-1 operator until she saw a Union Beach patrol

car arrive where the Explorer was parked, and then left.

 Special Class II Officer Joseph Russo from the Union Beach

Police Department responded to the parking lot of the Shore Café

and parked his patrol car approximately five feet from the rear

of the Explorer. He saw a female, later identified as Susan

Svenson, standing outside the passenger side door. Russo confirmed

that the license plate number of the Explorer was the same as the

number Seig had provided to the 9-1-1 operator. The vehicle was

owned by defendant's husband.

 The Explorer was parked when Russo arrived, but as he

approached the rear, he heard the engine start and the person

sitting in the driver's seat, later identified as defendant, yell

to Svenson "Get in the car, let's go." Russo saw the brake lights

illuminate and yelled to defendant not to move the vehicle and to

turn off the engine. After ten seconds, defendant complied. The

vehicle never moved. Russo touched the hood and felt "it was

 3 A-5280-15T3
really hot." He did not fear that defendant would drive away

because his patrol car was blocking the Explorer.

 Russo asked defendant for her credentials and told her to

remain in the Explorer. Defendant did not comply and as she exited

the vehicle, fell out and had to hold onto the door to prevent

herself from falling to the ground. Russo smelled the odor of an

alcoholic beverage coming from defendant's breath as she fell out

of the Explorer.

 When Russo asked defendant how she and Svenson arrived at the

Shore Café, she initially said "Susan," but then said "no one

drove." Defendant admitted she had no driver's license, and

dispatch confirmed it was suspended. Svenson pointed to defendant

when Russo asked how she and defendant arrived at the Shore Café.

When Russo told defendant that he saw her in the driver's seat,

she denied it and said she did not know how the Explorer got to

the Shore Café.

 Russo saw that defendant and Svenson had food all over their

clothing and asked Svenson what happened. She replied that they

had gone to a bar at approximately 6:00 p.m. and had a few drinks,

went to Taco Bell, then were driving around and defendant was "all

over the place, and the food spilled all over them from [defendant]

driving erratically." When Russo asked defendant again who was

driving the Explorer, defendant again said that no one was driving

 4 A-5280-15T3
and she did not know how the vehicle got to the Shore Café. Russo

administered field sobriety tests to defendant, which she did not

perform satisfactorily. During one test, defendant started to

fall over and Russo grabbed her before she fell down. Russo

arrested defendant for driving while intoxicated (DWI).

 Defendant filed a motion to suppress her arrest based, in

part, on the lack of probable cause that she operated or intended

to operate the Explorer. In denying the motion, the motion judge

noted that proof of actual operation is not necessary, but rather,

operation can be established by circumstances which indicate an

intent to operate. The judge made detailed factual findings and

concluded based on the totality of the circumstances there was

probable cause that defendant operated the Explorer within the

meaning of N.J.S.A. 39:4-50(a) and relevant case law. This appeal

followed.

 II.

 Defendant contends in Point I the motor vehicle stop and

investigative detention were not supported by a reasonable and

articulable suspicion that she committed a motor vehicle offense.

Defendant argues that because Russo did not see her operating the

Explorer, there was no corroboration of the information Seig

 5 A-5280-15T3
provided to the 9-1-1 operator about the driver's erratic driving.1

We disagree.

 Our Supreme Court has established the standard of review

applicable to consideration of a trial judge's ruling on a motion

to suppress:

 Appellate review of a motion judge's factual
 findings in a suppression hearing is highly
 deferential. We are obliged to uphold the
 motion judge's factual findings so long as
 sufficient credible evidence in the record
 supports those findings. Those factual
 findings are entitled to deference because the
 motion judge, unlike an appellate court, has
 the opportunity to hear and see the witnesses
 and to have the feel of the case, which a
 reviewing court cannot enjoy.

 [State v. Gonzalez, 227 N.J. 77, 101 (2016)
 (quoting State v. Johnson, 42 N.J. 146, 161
 (1964)).]

The trial court's legal conclusions, however, are subject to de

novo review. State v. Hreha, 217 N.J. 368, 382 (2014). Applying

these standards, we discern no reason to reverse the denial of

defendant's motion to suppress.

1
 Defense counsel improperly stated in defendant's merits brief,
with no support in the record whatsoever, that Seig "provided a
fictitious telephone number to the [9-1-1] operator" and "may have
intentionally misidentified herself to the [9-1-1] operator."
"[I]t is inappropriate and may be sanctionable for an attorney to
include facts outside the record." Pressler & Verniero, Current
N.J. Court Rules, comment 3 on R. 2:6-2(a)(4) (2018). Thus, we
disregard those statements.

 6 A-5280-15T3
 "[W]hen the anonymous tip is conveyed through a 9-1-1 call

and contains sufficient information to trigger public safety

concerns and to provide an ability to identify the person, a police

officer may undertake an investigatory stop of that individual.

[Our Supreme] Court has previously treated an anonymous 9-1-1 call

as more reliable than other anonymous tips." State v. Gamble, 218

N.J. 412, 429 (2014). An investigative stop of a vehicle is

allowable based on an anonymous 9-1-1 call reporting erratic

driving. State v. Golotta, 178 N.J. 205, 209 (2003). The Court

in Golotta held that a 9-1-1 call establishes reasonable suspicion

for a stop when it: (1) conveys that the caller witnessed an

ongoing offense that implicates a risk of imminent death or serious

injury to a person or the public; (2) was placed close in time to

the caller's first-hand observations; and (3) provides a

sufficient quality of information, such as vehicle description,

license plate number and direction, to ensure the vehicle stopped

is the same one the caller identified. Id. at 221-22.

 In Navarette v. California, 572 U.S. ___, ___, 134 S. Ct.

1683, 1690-91, 188 L. Ed. 2d 680, 689-91 (2014), the Supreme Court

favorably referred to Golotta, and used a similar rationale in

holding that an anonymous 9-1-1 call claiming eyewitness knowledge

of dangerous driving contained sufficient indicia of reliability.

Independent police corroboration is not required. Id. at ___, 134

 7 A-5280-15T3
S. Ct. at 1691-92, 188 L. Ed. 2d at 690-91 (rejecting independent

corroboration by recognizing that "allowing a drunk driver a second

chance for dangerous conduct [that could then be observed by a

police officer] could have disastrous consequences"); Golotta,

supra, 178 N.J. at 226 (holding that "a police officer need not

wait for corroboration that might be fatal to an innocent member

of the public or to the driver himself").

 The facts of this case satisfy the factors prescribed in

Golotta. Seig reported the Explorer's erratic driving as she

witnessed it and provided a vehicle description, the license plate

number, the direction in which the vehicle was travelling, and the

location where it had stopped. What Seig witnessed as she followed

the Explorer was indicative of drunk driving that implicated a

risk of imminent death or serious injury to a person or the public.

See Navarette, supra, 572 U.S. at ___, 134 S. Ct. at 1690-91, 188

L. Ed. 2d at 689-91 (noting that driving "all over the road,"

"crossing over the center line," and "weaving back and forth" are

"dangerous behaviors" indicative of drunk driving). Because the

Golotta factors were satisfied, Seig's 9-1-1 call provided the

requisite reasonable suspicion for the stop of the Explorer and

the investigative detention.

 8 A-5280-15T3
 III.

 Defendant contends in Point II that the judge erred in finding

she operated the Explorer or had the intent and ability to operate

it. This contention lacks merit.

 N.J.S.A. 39:5-25 expressly authorizes a law enforcement

officer to "arrest without warrant any person who the officer has

probable cause to believe has operated a motor vehicle in violation

of [N.J.S.A.] 39:4-50 . . . regardless of whether the suspected

violation occurs in the officer's presence." "[A] person who

operates a motor vehicle while under the influence of intoxicating

liquor . . . with a blood alcohol concentration of 0.08% or more"

is guilty of DWI. N.J.S.A. 39:4-50(a). The term "operate" as

used in N.J.S.A. 39:4-50(a) has been broadly interpreted. State

v. Tischio, 107 N.J. 504, 513 (1987); appeal dismissed, 484 U.S.

1038, 108 S. Ct. 768, 98 L. Ed. 2d 855 (1988).

 Proof of actual operation is not required. Ibid. Intent to

move a motor vehicle is "operation" under the statute. Ibid. Our

Supreme Court has held that

 a person "operates" -- or for that matter,
 "drives" -- a motor vehicle under the
 influence of intoxicating liquor, within the
 meaning of N.J.S.A. 39:4-50 and 39:4-50.1,
 when, in that condition, he enters a
 stationary vehicle, on a public highway or in
 a place devoted to public use, turns on the
 ignition, starts and maintains the motor in
 operation and remains in the driver's seat

 9 A-5280-15T3
 behind the steering wheel, with the intent to
 move the vehicle[.]

 [State v. Sweeney, 40 N.J. 359, 360-61
 (1963).]

Evidence of intent to drive or "intent to move the vehicle"

satisfies the statutory requisite of operation so that actual

movement of the vehicle is not required. Id. at 361.

 We have held there is probable cause to arrest a defendant

for DWI based on "intent to operate" where he was "behind the

wheel of a vehicle with its lights on and its engine running at a

time when his breath disclosed a heavy odor of alcohol." State

v. George, 257 N.J. Super. 493, 496-97 (App. Div. 1992). In State

v. Mulcahy, 107 N.J. 467, 480, the Court applied a pragmatic

understanding of "operating a motor vehicle" consistent with the

underlying legislative purpose, ruling that the apparently

intoxicated defendant's attempt to put his key into the vehicle's

ignition constituted operation of a motor vehicle within the

meaning of the DWI statutes.

 There is sufficient credible evidence in this case that

defendant intended to operate the Explorer. She was sitting in

the driver's seat at the steering wheel with the engine on and

brakes engaged, and she yelled to her passenger to "Get in the

car, let's go." Even though defendant's vehicle never moved,

"engaging of the engine in a moving vehicle is not required for a

 10 A-5280-15T3
conviction" for driving under the influence and, in turn, probable

cause of such. State v Stiene, 203 N.J. Super. 275, 279 (App.

Div.), certif. denied, 102 N.J. 375 (1985).

 Defendant's conviction is affirmed, and the matter is

remanded to the trial court for imposition of sentence.

 11 A-5280-15T3